# IN THE COURT OF APPEALS OF IOWA

No. 18-0086
Filed March 21, 2018

**IN THE INTEREST OF D.M.,**
**Minor Child,**

**A.D., Mother,**
 Appellant.
_____

 Appeal from the Iowa District Court for Polk County, Susan C. Cox, District Associate Judge.

 A mother appeals from an order terminating her parental rights pursuant to Iowa Code chapter 232 (2017). **AFFIRMED.**

 Tammy M. Westhoff Gentry of Parrish, Kruidenier, Dunn, Boles, Gribble, Cook, Parrish, Gentry & Fisher L.P., Des Moines, for appellant mother.

 Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

 Brent M. Pattison of Drake Legal Clinic, Des Moines, guardian ad litem for minor child.

 Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

Ariana appeals from the order terminating her parental rights in her child, D.M. Ariana raises two challenges on appeal. She argues the evidence is insufficient to support termination of her parental rights. She also argues guardianship is a better alternative to termination of her parental rights.

I.

Ariana is the mother of D.M. (born 2010). The family first came to the attention of the Iowa Department of Human Services (IDHS) in August 2016 when it was reported Ariana was abusing controlled substances, including the abuse of prescription pills. The child reported the mother regularly crushed pills, injected substances, and passed out in the child's presence. D.M.'s maternal grandmother corroborated Ariana's drug use. In addition to Ariana's intravenous drug use in the presence of her child, IDHS had concerns regarding Ariana's ability to meet the basic needs of the child due to Ariana's joblessness and homelessness. The father was in federal prison at the time these concerns arose and not available to care for the child. D.M. was removed from Ariana's care and placed with the maternal grandparents.

By the time of the termination hearing in October 2017, Ariana had not addressed the concerns giving rise to removal. She commenced outpatient substance-abuse treatment in October 2016 and had some success. However, Ariana did not complete the treatment. In December 2016, Ariana reported symptoms of anxiety and depression and told workers she was prescribed hydrocodone for pain relief for her teeth. She subsequently failed to comply with drug testing in February, March, April, and May 2017. Shortly before the

termination hearing, Ariana tested positive for opiates and oxycodone. There were other reports the mother had been using methamphetamine intravenously. It was clear from the evidence presented at the termination hearing that Ariana was doctor shopping and abusing morphine and oxycodone, among other things. In addition, it was clear Ariana was in denial regarding her substance-abuse addiction. At the time of the termination hearing, Ariana remained unemployed and homeless. She testified she had been living with a friend for a few weeks, although she could not recall the address.

The juvenile court terminated Ariana's parental rights in D.M. pursuant to section 232.116(1)(f) (2017). Ariana timely filed this appeal.

II.

This court reviews termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework authorizing the termination of a parent-child relationship is well established and need not be repeated herein. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (setting forth the statutory framework).

III.

On de novo review, we conclude there is clear and convincing evidence authorizing the termination of Ariana's rights pursuant to Iowa Code section 232.116(1)(f). We have interpreted this provision to require, among other things, "clear and convincing evidence the child[] would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing." *In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

D.M. was removed from Ariana's care due in part to Ariana's use of controlled substances, including intravenous use of controlled substances while in the presence of the child. The child explained how Ariana crushed pills, injected drugs via needles, and passed out. Ariana has never completed substance-abuse treatment. She continues to use opioids, testing positive shortly before the termination hearing. She continues to minimize her addiction even in the face of a severe dependency diagnosis. Ariana's history of injecting controlled substances in the presence of the child when coupled with the denial of her substance-abuse addiction demonstrates the child would be exposed to an appreciable risk of harm if returned to Ariana's care. *See, e.g., In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (noting drug addiction can render a parent unable to care for children); *In re L.S.*, No. 17-1824, 2018 WL 540968, at *1 (Iowa Ct. App. Jan. 24, 2018) (providing untreated substance abuse can create a risk of harm to the children); *In re R.P.*, No. 16-1154, 2016 WL 4544426, at *2 (Iowa Ct. App. Aug. 31, 2016) (affirming termination of parental rights of parent with history of drug abuse); *In re H.L.*, No. 14-0708, 2014 WL 3513262, at *3 (Iowa Ct. App. July 16, 2014) (affirming termination of parental rights when parent had history of substance abuse).

In addition, Ariana's joblessness and homelessness demonstrate she would not be able to provide adequate care for the child. The lack of stable housing is of great concern in this case as the record reflects Ariana has resided with a drug dealer in an environment not suitable for the care of a child. *See, e.g., In re J.C.*, No. 17-0750, 2017 WL 3283395, at *3 (Iowa Ct. App. Aug. 2, 2017) (affirming termination of parental rights where mother was unemployed and essentially

homeless); *In re M.T.*, No. 03-1417, 2003 WL 22346539, at *2 (Iowa Ct. App. Oct. 15, 2003) (considering mother's inability to find employment or stable housing when determining children could not be returned to her care); *In re K.H.*, No. 03-0671, 2003 WL 21459582, at *2 (Iowa Ct. App. June 25, 2003) (concluding the children would be at a continued risk for harm when the father did not have stable employment or housing).

IV.

Ariana argues this court should exercise its discretion to preserve the parent-child relationship and place D.M. in a guardianship with the maternal grandmother rather than terminate her parental rights. The factors outlined in 232.116(3) are permissive, not mandatory. *See In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). "Once the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination." *Id.* at 476.

Ariana has not met her burden in establishing a guardianship is preferable under the circumstances. "[A] guardianship is not a legally preferable alternative to termination." *Id.* at 477 (citation omitted). None of the persons involved in this case advocated for a guardianship in lieu of termination of Ariana's parental rights. The caseworker testified that IDHS would not support a guardianship because "Ariana and [the maternal grandmother] have a history of not getting along when it comes to [D.M.], and I think in another couple of years if she tried to fight for custody, that would be another upset in [D.M.]'s life that I don't think [the child] needs to endure." The guardian ad litem also recommended termination of Ariana's parental rights. "It is significant to us that neither the third-party service

providers nor the [guardian ad litem] believed [the child] could be safely returned to her parent[] at the time of trial." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014). *See In re A.S.*, 906 N.W.2d at 476 (rejecting a request to establish a guardianship and noting the case manager and guardian ad litem recommended termination of parental rights).

This case is not analogous to *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017), as Ariana claims. In that case, the court concluded a guardianship with the maternal grandmother was preferable to termination of the mother's parental rights where the mother and child shared a close bond, the mother had substance-abuse issues but had also had many years of sobriety, the child expressed an interest in maintaining a relationship with the mother, and the mother and grandmother had a close relationship "free of conflict." *See B.T.*, 894 N.W.2d at 34. Here, Ariana and her mother have a history of conflict, and the grandmother did not advocate on behalf of the mother.

Nothing in this record warrants the use of judicial discretion to preserve the parent-child relationship. By all reports, D.M. is happy and enjoys the stability of living with the maternal grandmother. IDHS reported the child "has integrated into his grandmother and step-grandfather's home. [D.M.] is loved and has a very close relationship with [them] . . . . Termination and adoption is the least detrimental permanency option for this child and it outweighs any benefit of maintaining the parent child relationship." We agree with IDHS's assessment.

V.

For these reasons, we affirm the order of the juvenile court terminating Ariana's parental rights in D.M.

**AFFIRMED.**

.