# IN THE COURT OF APPEALS OF IOWA

No. 19-1574
Filed January 9, 2020

**IN THE INTEREST OF A.C. and P.C.,**
**Minor Children,**

**N.C., Mother,**
　　Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Jason A. Burns, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Lanny M. Van Daele of Van Daele Law, LLC, North Liberty, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Anthony A. Haughton of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., Schumacher, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**VOGEL, Senior Judge.**

A mother appeals the termination of her parental rights to her two daughters, A.C., born 2007, and P.C., born 2011. Because of the mother's cognitive and physical disabilities, she is unable to care for herself or for her children. The juvenile court found, and we agree, termination of the mother's parental rights is in the best interests of the children.[1] We therefore affirm.

The family came to the attention of the Iowa Department of Human Services (DHS) in March 2018, when the mother's physical condition made it difficult for her to tend to the children's daily care. The mother has been diagnosed with Huntington's disease, which affects both physical and cognitive function. The children were removed and placed with their paternal aunt and uncle, where they had frequently stayed in the past; they have remained in the same home throughout these proceedings. The mother stipulated the children were in need of assistance, and the family began receiving services. Although the mother's substance use was a concern, the primary focus of services was on managing the mother's medical condition. With the mother's physical and mental function in decline while the children's need for care and stability increased, a petition for termination of the mother's parental rights came on for hearing in June 2019. After receiving evidence, including expert medical testimony and reports, the juvenile court found the State proved the grounds for termination by clear and convincing evidence, termination is in the children's best interests, nothing precluded termination, and termination was preferred over the establishment of a

---

[1] The children's father died from a drug overdose in 2016.

guardianship, under our case law and Iowa Code section 232.116(1)(f), (2), and (3) (2019). The mother appeals.

We review termination proceedings de novo. *In re C.B.,* 611 N.W.2d 489, 492 (Iowa 2000). We are not bound by the juvenile court's findings of fact, but we give them weight, especially in assessing the credibility of witnesses*. Id.* Concerned that the written transcript of these proceedings would not accurately convey the mother's demeanor during her testimony, the juvenile court directed an auditory recording of her testimony.[2]

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f), which provides the court may terminate parental rights if it finds all of the following:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

---

[2] The termination order included this notation:
> During the termination trial, the Court observed some of the same symptoms described by the medical professionals. Though the Court has no ability to quantify her level of impairment merely by listening to her testimony, the Court could observe that she seemed confused at times and had problems recalling information.[6]
>
> ---
>
> [6]After only a very short period of time, the Court paused the proceedings to utilize an electronic voice recorder in order to effectively record [the mother's] testimony. The written record likely would not adequately reflect the issues described, such as her confusion and could not reflect her physical condition.

The audio recording was not included in the record that the parties transmitted to the supreme court clerk's office for this appeal. We therefore requested a copy of the recording, which the county clerk's office electronically submitted and subsequently certified to comply with Iowa Rule of Civil Procedure 6.801. We reviewed the audio, as it was clearly created to capture witness demeanor, which is lost on our paper review. *See In re Marriage of Wegner*, 434 N.W.2d 397, 400 (Iowa 1988) (Harris, J. dissenting) ("One who personally observes holds a clear advantage over us who learn the case from a cold record."). However, the audio was not critical in reaching our ultimate decision to affirm the district court.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother only contests the findings as to the fourth element, asserting the children can be returned to her custody and she is able to care for herself and for her children. In the alternative, she asks us to establish a guardianship for the children in lieu of termination.

Although the current ability of the mother to care for her children is based largely on the effects of Huntington's disease, the record includes other information that explains some of the mother's more recent life choices. The family initially was involved with DHS in 2012 based on reports of domestic violence and substance abuse dating back to 2008 when the father was arrested for assaulting the mother. DHS conducted numerous family assessments over the years—summarized in the current record—with allegations of denial of critical care, naming both the mother and the father as perpetrators. After the father's death, the mother moved in with a man who reportedly was her late husband's drug dealer. In March 2018, just prior to the removal of the children, the mother tested positive for cocaine. Her current live-in boyfriend has a criminal record and pleaded guilty to burglary in the third degree in October 2018. As of the termination hearing, he had an outstanding warrant for his arrest for failure to appear for his presentence investigation. The children's recent need for counseling for adjustment disorder is therefore layered with years of past exposure to trauma in

the home, between the mother and the father and later with the mother and her boyfriends.

Although the mother offered testimony through friends and family that she is able to care for herself and the children, the juvenile court placed greater weight on the expert testimony that was to the contrary. Peggy Nopoulos, M.D.,[3] who has treated the mother since July 2013, diagnosed the mother with dementia secondary to Huntington's disease with "major cognitive deficit." In addition, she described the mother as having "involuntary movements," "coordination problems," and "imbalance problems." The doctor opined the mother requires around-the-clock care for herself and could not safely care for her children. She noted it is not unusual for those affected by Huntington's disease to have limited insight into their own abilities.

The children's therapist also testified the older child was doing much of the parenting of the younger child as well as doing a lot of the housework. She summarized the older child's anxiety as "struggling with a sense of permanency" and wanting "certainty about her future," and she described the younger child as "also just really wanting the situation to be resolved." Living with their aunt and uncle has given both children "a strong sense of stability." Both children expressed the desire to stay in their current placement and be adopted by their aunt and uncle. The older child has concerns that a guardianship would not be suitable, as it could be disrupted and lacks the permanency she desires. The juvenile court agreed, finding the children could not be returned to their mother, it was in the

---

[3] Dr. Nopoulos is a professor of psychiatry, neurology, and pediatrics and the chair of the Department of Psychiatry at the University of Iowa Hospitals and Clinics.

children's best interests to have the mother's parental rights terminated, and nothing precluded termination. *See* Iowa Code § 232.116(1)(f), (2), (3).

In addition, the court found establishing a guardianship for the children was not preferred because it would not give them the security and permanency they need. The record supports this conclusion, and we agree. "[A] guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). A hopeful note is that the children's aunt and uncle as well as other family members show compassion for the mother and children in the face of the mother's condition. The mother testified that she is "really close" to the aunt and uncle and feels included in their family life, and she reported they frequently exchange text messages regarding the girls. As the juvenile court found, "[T]he mother will continue to be a part of the children's lives as long as she is willing." We affirm the juvenile court's order.

**AFFIRMED.**

Schumacher, J. and Vaitheswaran, P.J., concur specially.

**SCHUMACHER, Judge (concurring specially)**

I concur with the majority that there is clear and convincing evidence that the children could not be returned to the custody of the mother at the time of the termination hearing, that termination is in the best interest of the children, and that the establishment of a guardianship is not preferred over termination. As such, I concur with the termination of the mother's parental rights. I write in special concurrence regarding the footnote contained on page 3 of the majority opinion in reference to the audio recording of the mother's testimony.

The trial court's termination order included a notation that after a short period of the mother's testimony, the court stopped the hearing proceedings and utilized an electronic voice recorder to record the remainder of the mother's testimony. The transcript reflects the following: "Mr. Van Daele, I'm going to just take a one second break. I'm going to grab a audio recording device just so that if there's a gap in the transcript or record I have an audio recording of the testimony."

The audio recording was not included in the record that the parties transmitted to the Supreme Court clerk's office for this appeal. No party requested such be made part of the record. The certificate of the court reporter indicated that the written transcript contained all of the testimony offered. A copy of the audio recording, at the request of our court, was later electronically submitted and

separately certified to comply with Iowa Rule of Civil Procedure 6.801 by the county clerk of court office.[4]

The concerns raised are two-fold. First, because this electronic recording was certified by the clerk of court after the transmission of the record, the litigants would likely not have had access to the certified recording. At the time of the submission, the official record would have consisted of the original documents and exhibits filed in the district court case, the transcript, a certified copy of the related docket, and docket entries prepared by the clerk of the district court.

Secondly, the electronic recording came before us at the request of our court, rather than as a part of the official record. This places the court in the position of creating the official record rather than reviewing the same. Therefore, I respectfully disagree with the use of the audio of the mother's partial testimony in our review of the record, as such was not a part of the official record at the time the appeal was submitted to our court and was likely not accessible to the litigants. Based on the independent review of the record without the audio recording of a portion of the mother's testimony, I join the majority opinion.

Vaitheswaran, P.J., joins this special concurrence.

---

[4] "Only the original documents and exhibits filed in the district court case from which the appeal is taken, the transcript of proceedings, if any, and a certified copy of the related docket and court calendar entries prepared by the clerk of the district court constitute the record on appeal." Iowa R. App. P. 6.801.