# IN THE COURT OF APPEALS OF IOWA

No. 20-1450
Filed February 3, 2021

**IN THE INTEREST OF J.H. and K.H.,**
**Minor Children,**

**H.O., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Warren County, Mark F. Schlenker, District Associate Judge.

　　A mother appeals the juvenile court order terminating her parental rights to her two minor children.  **AFFIRMED.**

　　Nancy L. Pietz, Des Moines, for appellant mother.

　　Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

　　Yvonne C. Naanep, Des Moines, attorney and guardian ad litem for minor children.

　　Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

The State sought to terminate the parental rights of the mother of the two children who are the subject of this action, J.H. and K.H. Following a hearing, the juvenile court terminated the mother's parental rights to both children under Iowa Code section 232.116(1)(h) (2020).[1] The mother appeals, arguing: (1) the State did not meet its burden to show the children could not be returned to her care at the time of the termination hearing; (2) the juvenile court erred by refusing to grant her request for a six-month extension to work toward reunification; (3) termination is not in the children's best interest; and (4) the juvenile court erred by terminating the mother's parental rights because the children have been placed with a relative.

## I.    Background

The children were removed from the mother's home in July 2019 after the Iowa Department of Human Services (DHS) learned there had been instances of domestic abuse between the parents and the children had been shuffled between a number of different caretakers without either parent visiting them for several weeks. The children were adjudicated as children in need of assistance (CINA) in September 2019.

Over the next six months, the mother did not meaningfully address the issues that led to the children's removal. Further, on March 15, 2020, the mother was arrested for domestic abuse causing bodily injury and for violating a no-contact order between her and the father. Following the mother's arrest, the State petitioned to terminate the mother's parental rights in April 2020. After a

---

[1] The juvenile court also terminated the father's parental rights in the same order. The father does not appeal.

termination hearing in August, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(h).  The mother appeals.

## II.     Standard of Review

"We review proceedings terminating parental rights de novo."  *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020) (per curiam) (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)).  "Our primary concern is the best interests of the child."  *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III.    Discussion

As noted, the mother raises four issues on appeal.  We will address them separately.

### A.     Statutory Grounds

The mother first argues the State did not meet its burden to prove the statutory ground of termination.   The juvenile court terminated the mother's parental rights to J.H. and K.H. under Iowa Code section 232.116(1)(h).  Under that provision, the State must show four elements for each child:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).  The mother only disputes the fourth element, arguing the children could be returned to her care because she "has a home, a job, stability and the ability to support the children."  On our de novo review, we conclude clear

and convincing evidence supports the finding the children could not be returned to the mother's care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("Section 232.116(1)(h) provides that termination may be ordered when there is clear and convincing evidence that a child under the age of three who has been adjudicated a CINA and removed from the parents' care for at least the last six consecutive months cannot be returned to the parents' custody at the time of the termination hearing.").

At the time of the termination hearing, the children had been removed from the mother's care for over a year. In that time, the mother did not adequately address the issues that led to the children's removal. One of the most concerning issues is the mother's mental health. *See In re D.H.*, No. 18-1552, 2019 WL 156668, at *2 (Iowa Ct. App. Jan. 9, 2019) (collecting cases that consider a parent's failure to seek mental-health treatment a factor weighing in favor of termination of parental rights). The DHS requested the mother complete a mental-health evaluation in July 2019 after the DHS learned the mother had acted erratically around others. A DHS worker then observed this erratic behavior personally in September 2019 when the worker assigned to the case observed the mother yelling at the children's father and accusing him of various acts of abuse as well as drug use during a meeting between the worker and the parents in relation to a hearing. The DHS worker experienced phone calls with the mother where, in one call, the mother would be highly agitated and argumentative, and then, in a second call minutes later, the mother would sound calm, collected, and responsive.

The juvenile court ordered the mother to undergo a mental-health evaluation, but she did not appear at the scheduled time, resulting in the mother being committed for two days. The mother completed a mental-health evaluation in November 2019, and she was diagnosed with depression and bipolar disorder. Individual therapy and medication was recommended for her. Despite the recommendation, the mother did not attend therapy until April 2020. Even then, the mother did not appear engaged and did not believe she had any issues that needed to be addressed. The longest she stayed at a session was approximately twenty-three minutes. At her May appointment, which was conducted over the phone, the mother's therapist called the mother and found out the mother was walking around Walmart during the appointment. The mother told her therapist she had nothing to talk about, and the session ended after six minutes. The mother then did not attend any therapy sessions from July until the termination hearing.

Similarly, the record shows the mother has not consistently visited the children. After the children were removed in September 2019, the mother began attending supervised visits with them. At some visits, the mother was not prepared and in one case required the mother's grandparents to provide the children with food. The mother did not attend other in-person visits, and she missed multiple visits hosted by videoconference. The mother claimed she missed some visits due to her exposure to COVID-19, but she offered no plausible explanation why she missed the visits conducted by videoconference.

The record also shows the mother has not adequately addressed improving her parenting skills. At the suggestion of service providers, the mother enrolled in

a parenting course, but she was discharged for nonattendance after attending only eight of eighteen sessions.

The mother has also failed to maintain stable housing and employment. She has bounced between living with her grandparents, the father, and with family friends throughout these proceedings, often moving after only a few months. The mother was living with her grandparents again at the time of the termination hearing and testified she was planning to move out again soon. The mother has similarly had unstable employment throughout these proceedings. At the time of the termination hearing, the mother had only been working in her current job for three weeks. In the months prior, the mother had changed jobs at least two other times, working at one for only one month.

In light of the mother's lack of progress in treating her mental-health issues, lack of progress in learning to parent the children appropriately, and unstable housing and employment, we find clear and convincing evidence the children could not be returned to the mother's care at the time of the termination hearing.

### B.    Additional Time

The mother argues that, as an alternative to termination, the juvenile court should have granted her a six-month extension to work toward reunification. Under Iowa Code sections 232.117(5) and 232.104(2)(b), the court may authorize a six-month extension if the court decides not to terminate parental rights and "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." As previously discussed, these proceedings have been ongoing since July 2019. In that time, the mother has not made meaningful efforts to address her mental-health issues and has not demonstrated an ability to

maintain stable housing and employment. She was no more a suitable placement option at the time of the termination hearing than she was at the time of removal over a year earlier. "The 'legislature has established a limited time frame for parents to demonstrate their ability to be parents.' The time frame is six months." *Z.P.*, 948 N.W.2d at 524 (quoting *In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018)). We cannot discern any basis for believing the need for removal will no longer exist after another six months.

### C. Best Interests

Having concluded the statutory grounds for termination have been shown, we next consider whether terminating the mother's parental rights is in the children's best interests. *A.S.*, 906 N.W.2d at 473 ("If we determine 'that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights.'" (quoting *In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016))). At this step of the analysis, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2).

At the time of the termination hearing, the children were one and two years old. They both lived much of their lives bouncing between relative placement and foster care. Both the children's guardian ad litem and the DHS recommend termination. Their current relative placement indicated a willingness to adopt the children in the event the mother's parental rights are terminated. The children's best interests are served by placing them in a stable, nurturing environment, which

the mother cannot provide. We conclude termination is in the children's best interest.

### D. Permissive Exception

Finally, the mother argues termination is unnecessary because the children are placed with relatives. She cites Iowa Code section 232.116(3)(a), which allows the juvenile court to not terminate a parent's parental rights when "a relative has legal custody of the child." We note the exception relied upon by the mother is permissive, not mandatory, so the court is not required to apply it even if it has been established. *See A.S.*, 906 N.W.2d at 475 (noting the permissive nature of exceptions in Iowa Code section 232.116(3)). As the parent resisting termination, she bears the burden of proof to establish the exception upon which she relies. *See id.* at 476.

We note the mother's failure to advance arguments in support of this issue constitutes waiver of the issue. *See State v. Tyler*, 867 N.W.2d 136, 166 N.14 (Iowa 2015) (indicating a "passing reference" in a brief in insufficient to avoid waiver of an issue).[2] Even if the record shows the children were in the custody of relatives at the time of the termination hearing,[3] the mother advances no argument

---

[2] The entirety of the mother's argument on this issue is: "The Court did not need to terminate parental rights as these children are in a relative placement. It is not in their best interests due to their bond with [the mother] and their attachment to her." This perfunctory argument is nothing more than a "passing reference" and is insufficient to avoid waiver.

[3] The State argues the children were in the custody of the DHS rather than with relatives and, therefore, section 232.116(3)(a) does not apply. The record is not crystal clear on this point, as there are orders in both the termination files and the underlying CINA files that create ambiguity whether custody was placed with the DHS or with the grandparents. We choose to resolve this ambiguity by assuming for the sake of this opinion that custody was with the grandparents rather than the DHS. We make this choice based on the juvenile court's order filed in the CINA

how that fact leads to a conclusion termination should not occur. *See A.S.*, 906 N.W.2d at 476 (noting a relative had legal custody of the child, thus establishing the facts of the exception, but refusing to apply the exception because the parent "failed to meet her burden to establish that the grandparents' temporary custody of the child should preclude termination of [the parent's] rights"). To the extent she is suggesting a guardianship with the relatives is in order, we note that "a guardianship is not a legally preferable alternative to termination." *See id.* at 477 (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). Further, any claimed bond between the mother and the children also does not justify denying termination, as the children are very young and have spent much of their lives out of the mother's care. Upon our de novo review, we find the mother has not met her burden to show relative placement should preclude termination.

## IV. Conclusion

Having found no merit in the mother's claims the juvenile court erred in terminating her parental rights, we affirm.

**AFFIRMED.**

---

cases on May 26, 2020. That order, which appears to be the last order addressing custody prior to the termination order, placed custody of the children with the paternal grandparents.