# IN THE COURT OF APPEALS OF IOWA

No. 20-1674
Filed August 18, 2021

**IN THE INTEREST OF S.H. and S.G.,**
**Minor Children,**

**T.H., Father of S.H.,**
        Appellant,

**M.G., Father of S.G.,**
        Appellant.
_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

Two fathers separately appeal from the termination of their parental rights to their children. **AFFIRMED ON BOTH APPEALS.**

Andrea B. McGinn, Van Meter, for appellant father of S.H.

David Barajas of Macro & Kozlowski, LLP, West Des Moines, for appellant father of S.G.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Magdalena Reese of Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor children.


Considered by Tabor, P.J., Greer, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**MAHAN, Senior Judge.**

Two fathers separately appeal from the termination of their parental rights to their children, S.H., born in 2016, and S.G., born in 2018.[1] The father of S.H. claims termination was not in his child's best interests and the juvenile court erred by not placing the child in a guardianship with the paternal grandmother. The father of S.G. contends termination was not in his child's best interests and the State failed to prove the grounds for termination cited by the juvenile court. We affirm on both appeals.

**I.** *Background Facts and Proceedings*

This family came to attention of the department of human services in April 2018, when S.G. tested positive for THC at birth. In May, the mother moved to Minnesota with the children, and the department ended its involvement. Shortly thereafter, unbeknownst to the department, the mother and children returned to Iowa. In August, Iowa law enforcement arrested the mother, who was a convicted sex offender in Minnesota, for violating sex offender registration requirements. The department became involved with the family again, and the mother provided a drug screen that was positive for methamphetamine and cocaine. S.G.'s father was incarcerated on a drug trafficking conviction. S.H.'s father lived in Minnesota, had a criminal history for domestic-assault and drug-related crimes, and had an active warrant for domestic assault. The children were adjudicated in need of assistance and removed from the mother's care.

---

[1] The mother filed an appeal and a voluntary dismissal; her appeal was dismissed.

The children were initially placed with S.G.'s half-sibling under department supervision, but that placement was modified in March 2019, upon the department learning the mother was taking S.H. to Minnesota with S.H.'s father, in violation of a no-contact order and a court order authorizing only supervised visitation for the parents. At that time, the Minnesota department had an open assessment relating to S.H.'s father and another child, due to reports that he was using heroin and living in his car with that child. The children were placed in separate foster homes.

The court entered a permanency order in September 2019, noting progress by the children's fathers. S.G.'s father was out of prison, engaged in visitation, had transitioned from a halfway house to his own home, and had provided "clean" drug screens for the department and his probation officer. S.H.'s father was out of prison, engaged in therapy, and "report[ed a] sobriety date [of] March 2019." The mother and S.H.'s father requested the children be placed with S.H.'s paternal grandmother, but the department had not approved that placement due to "erratic behaviors" by the paternal grandmother and her failure to complete a drug screen.[2] The court granted the parents a six-month extension to continue to work toward reunification.

In a December 2019 permanency review order, the court noted the grandmother had "not provided a drug screen as requested," "her behavior [wa]s erratic and defensive," and the court could not "assure her cooperation or protective capacity based on her actions." The court further noted S.H.'s father

---

[2] In October 2019, the guardian ad litem visited the paternal grandmother's home in Minnesota. The guardian ad litem recommended placement of S.H. with the paternal grandmother "subject to" the grandmother providing "a negative drug screen."

had "relapsed on heroin since the last hearing" and was "not providing drug screens as requested." The court instructed the department to "develop an appropriate concurrent plan" for S.H. However, S.G.'s father "continue[d] to be engaged fully in visits and services." The court ordered S.G.'s father's visitation to "increase and [the] parties [to] develop an appropriate transition plan." The goal remained reunification for both children.

Unfortunately, gains toward stability by S.G.'s father were short-lived. In January 2021, he relapsed on marijuana and cocaine. He continued to miss drug screens the next several months, and his fiancé also failed to provide a drug screen. The court's March 2021 permanency review order noted concern "that he chose to use knowing that he was working towards reunification" and stated he "is minimizing the impact of his cocaine usage and his substance abuse history." The court ordered his visits be reverted to fully supervised. The court noted S.H.'s father's "situation has also worsened since the extension was granted." In addition to relapsing on heroin, S.H.'s father "ha[d] continued to use," his substance-abuse evaluation recommended inpatient treatment, and he was "not consistent" with his visits with S.H. The court directed the State to initiate termination proceedings.

The termination hearing took place over three days in September and October 2020. On October 7, after receiving evidence of a clean drug screen by the paternal grandmother, the court ordered that S.H. be placed in a foster care placement with the paternal grandmother, under department supervision. The record before the juvenile court indicated the children had been removed since August 2018, and visits with the parents were fully supervised. The department caseworker noted the parents had acknowledged recent relapses and failed to

provide consistent drug screens. In light of these and other concerns, the department and the guardian ad litem recommended termination of parental rights as to both children.

In December 2020, the court entered an order terminating the parental rights as to both children. Specifically, the court ordered termination of S.H.'s father's parental rights pursuant to Iowa Code section 232.116(1)(b), (e), and (f) (2020), and S.G.'s father's parental rights pursuant to section 232.116(1)(h). The fathers separately appeal.

## II.    *Standard of Review*

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.    *Discussion*

On appeal, S.H.'s father claims termination was not in his child's best interests and the juvenile court erred by not placing the child in a guardianship with the paternal grandmother. The father of S.G. contends termination was not in his child's best interests and the State failed to prove the grounds for termination cited by the juvenile court. We address these arguments in turn.

### A.    *S.H.'s Father's Appeal*

As the juvenile court observed, S.H.'s father was unsuccessfully discharged from inpatient treatment in early September 2020 "due to relapsing in treatment." And, at the termination hearing, the father acknowledged he had provided a

positive drug screen for "opiates and methamphetamine" since his release from inpatient treatment. With regard to his sobriety, he testified he was "taking it one day at a time" and he was starting outpatient treatment "[t]omorrow." He stated his fiancé was also in inpatient treatment for "crack" or "methamphetamine." His last electronic visit with S.H. was in August 2020, and his last in-person visit was in November 2019. He acknowledged that he had pending criminal charges, but stated, "[I]t wasn't me. So when I go to court, it will be dismissed." In addition to these concerns, the court noted, "He has been expected to address his history of domestic violence in therapy," but "[t]he court has no evidence that he has addressed domestic violence." Under these facts and circumstances, we find termination of S.H.'s father's parental rights is in the child's best interests. *See In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018) (citing Iowa Code § 232.116(2)).

We are also not persuaded by the claim that the court erred in declining to place S.H. in a guardianship with the paternal grandmother rather than terminating parental rights. As a general matter, "a guardianship is not a legally preferable alternative to termination." *Id.* at 477 (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). That notion rings true in this case. The department caseworker testified she last had contact with S.H.'s father in "June of 2020." And S.H. had very recently been placed in the paternal grandmother's care. As the court observed:

> [S.H.'s father] has struggled with his addiction since the beginning of this case. He has not been a consistent parental figure to his child. It is not in [the child's] best interests to continue to suspend the crucial days of childhood while the parents experiment with ways to face up to their own problems. . . . [S.H.] is now placed with his grandmother . . . . She has testified that she will adopt if termination happens. He is able to be with family.

S.H. needs and deserves stability. Although it was not an easy road to placement with his paternal grandmother, by all accounts, S.H.'s needs are being met in his grandmother's care and he is integrated into her home. That placement provides hope for future long-term stability for the child. We agree a guardianship is not an appropriate alternative to termination in this case.

### B.    S.G.'s Father's Appeal

S.G.'s father challenges the statutory grounds for termination. Iowa Code section 232.116(1)(h) requires proof of several elements conceded by the father, as well as proof the child could not be returned to his custody. The father contends the evidence did not establish S.G. could not be returned to his care at the present time. According to the father, "The [d]epartment's main reason for requesting termination of [his] rights was due to his alleged substance abuse," but he "had one relapse in January of 2020, obtained a substance abuse evaluation which recommended no treatment, [and] complied with [drug testing] through his parole officer before the program was stopped due to Covid-19." He claims that "[a]t the time of the termination of parental rights trial [he] was fully able, capable, and willing to have S.G. placed in his care."

Indeed, a caseworker testified that the department "had begun progressing [the father's] visits" until the "setback in January of 2020 when he relapsed on cocaine." But she further stated that, "since that time, we haven't been able to get [the father] to complete a drug screen." In March 2020, the court ordered that S.G.'s father "shall participate in random drug screens to include the sweat patch." Thereafter, in June, the father refused a sweat-patch test, despite understanding

that his refusal would be considered "a positive drug screen." He acknowledged he had declined to give "three or four" additional drug screens since the last court hearing. His fiancé had also refused a drug screen. In August, the department learned the father had not been providing drug screens for his parole officer because he "had told her he was doing 'the patch.'" The caseworker opined "this was not truthful as [the father] has not been willing to comply with sweat patch drug screens." A different caseworker noted the father's failure to provide drug screens was "not just a logistical issue," and she expressed "concerns that drug screens have not consistently been done" with regard to the "longevity" of his role as a "primary parent."[3] Based on these and the other facts detailed above, we concur with the court's assessment that S.G. could not be returned to the father's care at the time of the termination hearing. Iowa Code section 232.116(1)(h) was satisfied.

Termination must also serve the child's best interests. *See* Iowa Code § 232.116(2). We acknowledge the bond shared between S.G. and the father and the testimony regarding the parenting ability shown by the father during visitations. But ultimately, as the department noted, "[S.G.'s father] has a long history of criminal involvement in illegal substances. He has not been able to demonstrate that he can maintain long-term sobriety in the community." The child is in need of permanency. We conclude termination is in the child's best interests, and no permissive statutory exception should be applied to preclude termination.

---

[3] S.G.'s father testified that he has eleven children, who had all lived with their mothers, and he had not been a primary parent for any of those children.

Having addressed the issues raised on the fathers' appeals, we affirm the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**