# IN THE COURT OF APPEALS OF IOWA

No. 22-0004
Filed April 13, 2022

**IN THE INTEREST OF M.G. and S.R.,**
**Minor Children,**

**STATE OF IOWA,**
        Appellant,

**KATIE REIDY ABEL, Guardian Ad Litem,**
        Appellant.
_____

        Appeal from the Iowa District Court for Cedar County, Gary P. Strausser, District Associate Judge.

        A guardian ad litem and the State of Iowa appeal the order denying a petition to terminate parental rights. **REVERSED AND REMANDED.**


        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellant State.

        Katie Reidy Abel of Beine & Abel Law Firm PLC, Tipton, attorney and guardian ad litem for minor children.

        Mark J. Neary of Neary Law Office, Iowa City, for appellee father of M.G.

        Brian James Metcalf of Metcalf, Conlon & Siering, P.L.C., Muscatine, for father of S.R.

        Lanny M. Van Daele of Van Daele Law, LLC, North Liberty, for mother.


        Considered by Bower, C.J., and Vaitheswaran and Chicchelly, JJ.

**CHICCHELLY, Judge.**

This appeal concerns two children—M.G., now eight, and S.R., now eleven—whom the juvenile court adjudicated as children in need of assistance (CINA) in September 2017.  The children's guardian ad litem and the State of Iowa appeal the December 2021 order denying the petition to terminate the parental rights of their mother and their respective fathers.  Although the juvenile court found clear and convincing evidence to terminate,[1] it instead placed the children in a long-term guardianship with their maternal aunt and denied the petition under Iowa Code section 232.116(3)(a).  We review the order de novo.  *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

Iowa Code section 232.116(3)(a) states that the court "need not terminate the relationship between the parent and child if the court finds . . . [a] relative has legal custody of the child."[2]  The decision to avoid termination based on relative

---

[1] The juvenile court found clear and convincing evidence to terminate the mother's parental rights to both children under Iowa Code section 232.116(1)(e) and (f) (2020).  It found clear and convincing evidence to terminate the parental rights of M.G.'s father to M.G. under Iowa Code section 232.116(1)(e) and (f) and the parental rights of S.R.'s father to S.R. under section 232.116(1)(b) and (d).  These findings are not in dispute on appeal, and the record supports them.

[2] There is a dispute over whether this section applies based on discrepancies in the wording of various orders.  Section 232.116(3)(a) applies when a relative has legal custody of the child, not when the Iowa Department of Humans Services (DHS) places a child in the care of a relative.  *See In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021) (stating section 232.116(3)(a) "can come into play only when a relative has 'legal custody'"); *In re A.M.*, 843 N.W.2d 100, 105, 113 (Iowa 2014) (finding that, although the DHS placed A.M. in the care of her grandparents, section 232.116(3)(a) did not apply because she was not in their legal custody).  The adjudicatory order places the children in the custody of the maternal aunt, "subject to supervision by the [DHS]."  This language is repeated in other orders.  But a dispositional review order entered in June 2019 states the children "are placed in the custody of the [DHS] for placement in family foster care."  An October 2019 permanency review order returns to the language placing the children in the maternal aunt's custody.  And a January 2020 permanency order

custody is "permissive, not mandatory." *Id.* at 475. We use our discretion to determine whether to save the parent-child relationship under the facts before us. *Id.*

The children have lived with their maternal aunt since the CINA adjudication. There is no question that the maternal aunt can keep the children safe and provide them with stability. The children have bonded with her and are doing well. By all indications, they wish to remain in her care. The maternal aunt testified at the termination hearing that she would continue to allow the children to have contact with their parents and extended family:

> I'm not going to cut any ties with any of them, the grandmother, the mother, the father. That's all I've been trying do, especially, working with all them. But I do think that, you know, it's just going to have to work around all their schedules to do so. But we'll do the best we can. I don't want any of them not to see them. That's their parents. But I do truly believe that, you know, I'm the best thing for them right now. And I'll go do whatever I need to do to keep them safe and, you know, happy. So that's all that's got to be.

The juvenile court found her testimony credible.

In deciding to apply section 232.116(3)(a) to avoid termination, the juvenile court found a long-term guardianship with the maternal aunt would provide the same safety and stability as termination. We disagree. Our courts do not prefer guardianship over adoption. *See id.* at 477. As the supreme court noted in *A.S.*,

---

simply states that "the children are continued in their current custodial and service placement." The order denying the termination petition places the children "in the custody and guardianship of [the maternal aunt], subject to supervision by the [DHS]." But after the guardian ad litem applied for order nunc pro tunc because of concerns about eligibility for a subsidized guardianship, the court corrected the order to "place the children in the custody of the [DHS] for continued foster care placement with [the maternal aunt]." But we need not resolve the issue; even if the children are in relative custody as contemplated under section 232.116(3)(a), we decline to apply the section to avoid termination for the reasons below.

a guardianship requires annual reports to the court until the children reach the age of majority. *Id.* at 477-78. Until that time, the court may end the guardianship or appoint a different guardian. *Id.* at 478. For that reason, a guardianship inherently offers less permanency than adoption. *But see In re B.T.*, 894 N.W.2d 29, 33 (Iowa Ct. App. 2017) (holding, under the specific facts of that case, that placing the child in a guardianship with his grandmother was no less permanent than requiring the grandmother to adopt).

If termination is appropriate, a relative's willingness to take the children will not change that. *See A.S.*, 906 N.W.2d at 475. The deciding factor is the children's best interests. *See id.* In determining best interests, we consider the children's safety, "the best placement for furthering the long-term nurturing and growth," and their "physical, mental, and emotional condition and needs." *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (quoting Iowa Code § 232.116(2)). The "defining elements" are the children's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

Turning to the children's best interests, we agree with the guardian ad litem and the State that termination is necessary. As the juvenile court recognized, these children "are struggling with the length of time that this case has been pending." The service provider testified that the children told her "that they just want it to get over, they want it to end. They want to know what is going on and . . . that they will be with [the maternal aunt]. They . . . don't quite get why it's taking so long or just the turmoil." The maternal aunt is able and willing to adopt. Terminating parental rights to allow her to do so will give the children the permanency they need. And because the maternal aunt supports continued

contact between the children and their parents, this permanency can be afforded without completely severing established relationships between the children and their relatives.  The DHS, family support specialist, guardian ad litem, and foster care review board agree that terminating parental rights to allow the maternal aunt to adopt is in the children's best interests.

Because terminating parental rights is in the children's best interests, we reverse the juvenile court's order and remand for an order terminating parental rights.

**REVERSED AND REMANDED.**