## IN THE COURT OF APPEALS OF IOWA

No. 17-0093
Filed April 5, 2017

**IN THE INTEREST OF B.T.,**
**Minor child,**

**A.P., Mother,**
         Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Louise M. Jacobs,

District Associate Judge.


        A mother appeals the termination of her parental rights to her child.

**REVERSED AND REMANDED WITH DIRECTIONS.**


        Zachary C. Priebe of Jeff Carter Law Offices, P.C., Des Moines, for

appellant mother.

        Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer,

Assistant Attorney General, for appellee State.

        ConGarry D. Williams of the State Public Defender, Des Moines, guardian

ad litem for minor child.


        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

A.P. appeals the termination of her parental rights to her child, B.T., born in 2006.[1]  She does not dispute that grounds for termination of her parental rights were established.  Rather, she contends the juvenile court should have established a guardianship for the child with his maternal grandmother because termination of the mother's rights is not in the child's best interests and the statutory factors found in Iowa Code section 232.116(3) (2016) apply here, negating the need to terminate.  Upon our de novo review of the record, *see In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016), we agree.  Accordingly, we reverse and remand the case to the juvenile court with directions.

## I.  *Background Facts and Proceedings.*

The mother was born in 1989 and began abusing alcohol and drugs when she was twelve years old.  Since the child's birth in 2006, a pattern has emerged wherein the mother is able to remain sober for a period of time—sometimes years at a time—followed by a relapse.  When the mother has fallen off the wagon, the child's maternal grandmother (Grandmother), and at times the paternal grandmother, have intervened to care for the child.

When the mother is sober, she is a dedicated and loving parent who shares a close relationship with the child.  Yet, the mother has relapsed since the child's birth at least four times, including methamphetamine use in November 2009, opioid use in November 2012, methamphetamine use in April 2013, and most recently, heroin use in August 2015.  Her most recent use led to the initiation of the present child-in-need-of-assistance (CINA) case and the

---

[1] The child's father did not appeal the termination of his parental rights.

placement of the child in his Grandmother's care, with supervision by the Iowa Department of Human Services (DHS), where the child has since remained.

Services for reunification were offered to the parents, but by July 2016, the DHS recommended the parents' parental rights be terminated. At the August 2016 permanency hearing, the mother requested an extension of time for reunification. The court denied the mother's request and directed the State to file a petition for termination of parental rights, which the State subsequently filed. Thereafter, the mother was arrested for violating her probation and for committing fourth-degree theft. She was incarcerated until October 19, 2016, and then was admitted for residential treatment at a women's treatment facility.

The termination-of-parental-rights hearing was held November 21, 2016. By all accounts, the mother's treatment was progressing, and she was on track to complete her established treatment goals. She was tentatively scheduled for discharge on December 9, 2016, at which time the mother would transition to a sober living facility for six to twelve months. During that time, the mother would be required to attend treatment and maintain employment.

The mother testified at the hearing and admitted the child could not be returned to her care at that time. But rather than terminating her parental rights, she asked that the court grant the Grandmother guardianship of the child. The Grandmother also testified, and she was asked about her opinion of terminating the mother's parental rights, answering:

> [T]his is [my daughter], and during this whole time that we've been dealing with this, it hasn't been [my daughter]; it was my daughter under the influence of drugs. [My daughter] is a wonderful mother. And I've talked to [the child] a lot about this. We do our hour-and-15-minute drive . . . to go see her and on the way back home . . . he

wants his mother. If his mom is clean and sober, he wants his mother.

And I feel that it's a process—it's a long process. As long as [the mother] can be in the facility that she's at . . . , I think she needs to take full advantage of that, be there as long as she can and get all the help that she can. I do say—this facility that she's going to right now is beyond anything she's ever had before. It's a great facility. They're working with her on her—the therapy that she needs, which is, I think, one of the hugest parts of what she needs to help her. And if she can stick with this and stay in this program as long as possible, I would love her to still have the opportunity to be his mother.

Ultimately, the juvenile court terminated the mother's parental rights, concluding:

[The child] is integrated into his [G]randmother's home. She has been there for him during his life, and more particularly since his formal removal from his parents' care and/or custody. She is willing to provide him a permanent home by adoption. While [the mother] would prefer to have [the child] wait until she has completed treatment, he should not have to wait any longer to have a permanent home. [The mother] has demonstrated that completion of treatment programs does not indicate that she is likely to maintain sobriety.

## II. Discussion.

The mother now appeals that ruling. She does not dispute that grounds for termination of her parental rights were established. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) ("Because the father does not dispute the existence of the grounds . . . , we do not have to discuss this step."). Rather, she asserts that a guardianship should have been established, with the Grandmother as guardian, arguing termination of her rights is not in the child's best interests and would be detrimental to the child due to the closeness of their relationship. She also notes the child is presently in the Grandmother's custody. The mother "submits that there is no functional difference in this case between guardianship

and termination due to placement not changing under either scenario," and she argues this "weighs against termination given the long-term needs and emotional condition of [the ten] year old child." Though this is a close call, for the following reasons, we agree with the mother that a guardianship should have been established.[2] And in doing so, we are not critical of the juvenile court, for we have said time and time again that a guardianship is not a legally preferable alternative to termination. *See, e.g.*, *In re N.M.*, No. 17-0054, 2017 WL 1088119, at *3 (Iowa Ct. App. Mar. 22, 2017) (citing *In re L.M.F.*, 490 N.W.2d 66, 67-68 (Iowa Ct. App. 1992)); *In re S.C.*, No. 15-1912, 2016 WL 903029, at *4 (Iowa Ct. App. Mar. 9, 2016) (same); *In re K.B.*, No. 15-1685, 2016 WL 146707, *4 (Iowa Ct. App. Jan. 13, 2016) (same); *In re C.B.*, No. 14-0704, 2014 WL 3513241, *2 (Iowa Ct. App. July 16, 2014) (same).

After a termination-of-parental-rights hearing, a number of options are available to the juvenile court. *See* Iowa Code § 232.117. If the court finds the grounds for termination alleged were not established, it must dismiss the termination-of-parental-rights petition. *See id.* § 232.117(2). If the court determines "facts sufficient to sustain the petition have been established," the court can either "order parental rights terminated," or it can "adjudicate the child to be a [CINA] and . . . enter an order in accordance with the provisions of section . . . 232.104." *Id.* § 232.117(3), (5).

---

[2] Under either scenario, there is no functional difference regarding placement of the child, but there is a functional difference regarding the legal ramifications between a guardianship—which can be terminated and the child returned to the mother—and a termination of parental rights, after which parental rights cannot be reinstated.

Section 232.104(2)(d) sets forth several permanency options for the child's placement, including transferring "guardianship and custody of the child to a suitable person" or transferring "custody of the child to a suitable person for the purpose of long-term care." *See id.* § 232.104(2)(d)(1), (3). However, the placements enumerated in paragraph (d) can only be ordered if the court first finds that convincing evidence exists showing termination of the parent-child relationship is not in the child's best interests and that the child could not be returned to the child's home even though "[s]ervices were offered to the child's family to correct the situation which led to the child's removal." *Id.* § 232.104(3)(a)-(c).

"As in all juvenile proceedings, our fundamental concern is the best interests of the child." *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001). In deciding what is in the child's best interests, we follow the framework established in section 232.116(2), giving "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *See also P.L.*, 778 N.W.2d at 37. But, "[e]ven though the court may determine that termination is appropriate under section 232.116(2), the court need not terminate a parent's parental rights if any of the circumstances contained in section 232.116(3) exist." *Id.* These circumstances include a relative having "legal custody of the child" or a determination that termination of the parent's parental rights would be detrimental to the child because of the closeness of the parent-child relationship. *See* Iowa Code § 232.116(3)(a), (c); *see also In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).

At the November 21, 2016 termination-of-parental-rights hearing, only the mother and Grandmother testified. No one from DHS testified. No attorneys present at that hearing, including the child's guardian ad litem, made an argument to the court on the record advocating for or against termination of parental rights, though clearly the State's petition was contested by the parents. An October 30, 2016 DHS report was entered as evidence at the hearing wherein the DHS worker recommended termination of parental rights, explaining:

> At this time this worker believes that [the child] is in need of a long-term permanent place that will provide him with stability and consistency. This worker does not believe that [the parents] are in a position at this time to provide that long-term placement for [the child]. This worker believes that a termination of parental rights hearing needs to be held.
> At this time neither [parent has] addressed their substance abuse issues. [The mother] has struggled to follow through with treatment. [She] does not have housing and would not have a home where [the child] would be able to reside. [The mother] also does not have a job and would not be able to support [the child] financially. Both parents have not been consistent with visitation throughout this case.

The court noted the recommendation in its termination-of-parental-rights ruling, and it concluded termination of the mother's parental rights would allow the Grandmother to provide the child with "a permanent home by adoption."[3]

Ultimately, the issue comes down to "permanency." Is the child's placement with the Grandmother as his guardian less permanent than requiring the Grandmother to adopt the child? Under the facts of this case, we think not.

---

[3] We also note the juvenile court's ruling stated the "child's guardian ad litem supports the termination petitions," but we can find no evidence of this in the record. The case docket does not show any reports were filed by the guardian ad litem, and the termination-of-parental-rights hearing transcript is silent as to the guardian ad litem's position.

Generally, permanency orders are not preferred over the termination of parental rights. *See In re L.M.F.*, 490 N.W.2d 66, 67-68 (Iowa Ct. App. 1992) (citing *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) ("Although Iowa Code section 232.116(2) suggests that the primary consideration in termination cases is 'the physical, mental, and emotional condition and needs of the child,' the legislature, in cases meeting the conditions of section 232.116(1)(e)(1), (2), and (3) (1989), has made a categorical determination that the *needs of a child are promoted by termination of parental rights*." (emphasis added)). *But see In re S.J.*, 451 N.W.2d 827, 832 (Iowa 1990) ("Termination is an outcome of last resort."). But here, we do not find the child's best interests are served by termination of the mother's parental rights. This is not a case where the child's future placement will remain in limbo if the mother's parental rights are not terminated. The Grandmother has been there for the child all of his life, and she will continue to do so regardless of whether or not the mother's parental rights are terminated. Similarly, the child's stability and long-term interests will not be affected if the mother's rights are *not* terminated and a guardianship is created. The child is now ten years old. The child wanted to maintain the relationship with his mother if she can remain sober, but if not, he wished to be placed with his Grandmother. A guardianship with the Grandmother will allow for both scenarios, thereby serving the child's best interests and needs. *See also, e.g.*, Josh Gupta-Kagan, *The New Permanency*, 19 U.C. Davis J. Juv. L. & Pol'y 1, 12 (2015) ("Empirical research has demonstrated that options which do not require terminations lead to caregiving relationships that last just as long as traditional adoptions. This continuum of equally permanent options suggests that moving to

permanency should not by default require terminations."); Randi Mandelbaum, *Re-Examining and Re-Defining Permanency from a Youth's Perspective*, 43 Cap. U. L. Rev. 259, 259-60 (2015) ("Federal and state laws mandate that efforts be made to find permanent families for all children placed in foster care, first, by reunifying them with their birth families or, when this is not possible, by securing alternate families through adoption *or guardianship*." (emphasis added)).

The mother and child love each other and share a close bond. There is no question the mother has experienced relapses during the child's life. However, the mother has also had successful years of sobriety. The mother and Grandmother testified that the treatment program the mother was in at the time of the termination-of-parental-rights hearing was unlike any other the mother had undergone. But even if the mother is not successful, the Grandmother, as guardian, will protect the child as she has always done.

It appears the mother and the Grandmother have a close, mature, and healthy relationship that is free of conflict. The Grandmother has cared for the child during the mother's periods of drug use. She has supervised interactions between the mother and the child during visitations, and the mother has been respectful of the Grandmother's decisions. The mother believes the Grandmother to be "an absolute wonderful mother and grandmother." It is evident the mother and the Grandmother can work together in the best interests of the child.

Upon our de novo review, considering the matters directed by Iowa Code section 232.116(2), we conclude termination of the mother's parental rights is not in the child's best interests. We also find that two exceptions under section

232.116(3)—specifically paragraphs (a) and (c)—apply to negate the need for termination of the mother's parental rights under the facts of this case. Additionally, we find the child still cannot be returned to the child's home even though services were offered to the mother to correct the situation that led to the child's removal, as described in section 232.104(3)(b) and (c). We therefore remand the case back to the juvenile court to enter an order transferring guardianship and custody of the child to the Grandmother pursuant to Iowa Code section 232.104(2)(d)(1). The juvenile court should review this order annually as mandated by section 232.104(7)(a), or more often if needed, to ascertain "whether the best interest of the child is being served." Alternatively, the juvenile court may close the CINA case and transfer "jurisdiction over the child's guardianship to the probate court" as described in section 232.104(7)(b). We do not retain jurisdiction.

**REVERSED AND REMANDED WITH DIRECTIONS.**