# IN THE COURT OF APPEALS OF IOWA

No. 21-0704
Filed August 18, 2021

IN THE INTEREST OF L.F. and L.F.,
Minor Children,

T.F., Mother,
    Appellant,

S.F., Father,
    Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, David F. Staudt, Judge.

A mother and father separately appeal the termination of their parental rights to their son and daughter. **AFFIRMED ON BOTH APPEALS.**

Jamie L. Schroeder of The Sayer Law Group, P.C., Waterloo, for appellant mother.

Christina M. Shriver, Waterloo, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Tammy Banning of the State Public Defender Office, Waterloo, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., Greer, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**TABOR, Presiding Judge.**

"If they don't think they need it, they won't participate in it."  So goes the juvenile court's description of the defiance exhibited by parents, Tricia and Shane, toward services recommended by the Iowa Department of Human Services (DHS).  Because they refused services critical to reunification, including drug testing and mental-health treatment, the court ordered termination of their parental rights to five-year-old Li.F. and two-year-old La.F.  Challenging that order, both parents insist the children could be safely returned to their care.  *See* Iowa Code § 232.116(1)(f)(4), (h)(4) (2020).  They also argue termination would be detrimental due to the closeness of their relationships with the children.  *See id.* § 232.116(2), (3).  Plus, Tricia argues the children should be placed in a guardianship.

After examining the record, we reach the same result as the juvenile court.[1]  Clear and convincing evidence shows Li.F. and La.F. could not return to parental care without an appreciable risk of abuse or neglect.  And denying the children permanency would be more harmful than terminating the parents' rights.  In that same vein, guardianship is not the preferred resolution.  Thus, we affirm.

---

[1] We review termination-of-parental-rights appeals de novo, which means we examine the facts and law and adjudicate anew those issues properly preserved and presented.  *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995).  The State must prove its allegations by clear and convincing evidence.  Iowa Code § 232.96(2).  That standard requires more than a preponderance but less than proof beyond a reasonable doubt.  *L.G.*, 532 N.W.2d at 481.  To affirm, we must have no serious or substantial doubt about the correctness of a particular conclusion the juvenile court has drawn from the evidence.  *Id.*  "The juvenile court's fact findings do not bind us, but we give them weight, particularly with regard to credibility."  *In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020).  Our key consideration is the children's best interests.  *Id.*

## I.    Facts and Prior Proceedings

The DHS took notice of this family in early 2019 when video surveillance at Menards recorded Tricia shoving toddler Li.F. down into a shopping cart and striking him.  Infant La.F. also was in the cart.  The child protection worker decided the incident would be founded for failure to supervise, but not confirmed for physical abuse.  The DHS placed the children with both their grandmothers in an initial safety plan over concerns the parents were using methamphetamine while caring for them.  Drug testing and individual therapy were part of that safety plan.  And because Shane had a history of domestic violence against Tricia, they were ordered to participate in separate visits with the children.  After an April family team meeting, the DHS returned the children to Tricia's care because she tested negative for drugs.  But the DHS prevented Shane from having unsupervised contact based on founded allegations he had used methamphetamine while the children were in the home.

By fall of 2019, the parents' drug use posed a significant risk to the children.  The DHS learned from a credible source the parents had drug paraphernalia with possible methamphetamine residue inside the family home.  The juvenile court approved removal of the children in October while awaiting DHS investigation.  Indeed, testing confirmed the children's exposure to the drug.  The DHS placed the children in foster care, where they have since remained.

Over the next fourteen months, the parents took a hostile stance against the DHS and their own attorneys.  The juvenile court described the parents' pointless pursuit:

> The couple spent valuable time and effort in researching and filing legal-appearing documentation that was mere gibberish. They mailed documents informing the [DHS] that they were suing the Department for millions of dollars. Following a hearing, the Court dismissed their motions.
>
> The couple did not cease their defiance. The couple pieced together a falsified official-looking court order. The falsified order granted them custody of their children. The couple enlisted the assistance of the Cedar Falls police department in an attempt to illegally obtain the physical custody of their children. At one point they also enlisted the assistance of the Waterloo police department. Ultimately their plan to utilize the falsified court order failed. A no-contact order was imposed on the couple to prevent them from further contact with the foster parents.

Both Tricia and Shane missed many random drug tests or provided diluted samples.[2] They did not follow through with individual or relationship counseling. And they asked for their attorneys to withdraw.

The one bright spot for the parents was their participation in visits. They rarely missed the twice per week supervised interactions. In fact, they provided elaborate entertainment, such as a bounce house and power wheels, for the visits. But as the juvenile court noted, despite the parents' efforts to make visitation an enjoyable experience, they "exerted little effort in any other aspect of the case permanency plan."

By October 2020, the juvenile court saw a glimmer of hope for reunification. Tricia secured employment. Both parents improved their participation in random drug testing. They started couple's counseling. And they agreed to have new attorneys represent them in the child-welfare proceedings. Given these developments, the court delayed permanency for three

---

[2] When Tricia did submit to a hair test in February 2020, she tested positive for methamphetamine. Shane also provided two positive sweat-patch tests in late July and mid-August.

months so the parents could receive legal advice and work to comply with DHS recommendations. But the parents squandered the extra time. In November, Tricia had another hair test with positive results for methamphetamine. And by December, the DHS reported that both parents were again missing random drug tests and skipping counseling sessions.

In January 2021, the State petitioned to terminate their parental rights. After a combined permanency and termination hearing in March, the juvenile court issued its decision granting the State's petition. Both Shane and Tricia appeal.

## II. Analysis

## A. Statutory Grounds

The parents first contend the State failed to prove the grounds for terminating their rights under section 232.116(1).[3] The juvenile court relied on three grounds—paragraphs (e), (f), and (h). We may affirm on any ground supported by the record. *In re L.H.*, 949 N.W.2d 268, 270 (Iowa Ct. App. 2020). We opt to focus on section 232.116(1)(f) and (h).[4]

---

[3] We recognize that termination proceedings are—both factually and legally—separate adjudications of the rights of each parent. *See In re D.G.*, 704 N.W.2d 454, 459 (Iowa 2005). So we consider each parent's claims on their own merits.

[4] Paragraph (f) applies to children ages four or older (here Li.F.) who have been out of parental custody for at least twelve of the last eighteen months and any trial period at home has been less than thirty days. Iowa Code § 232.116(1)(f)(1)–(3). Paragraph (h) applies to children ages three or younger (here La.F.) who have been out of parental custody for at least six of the last twelve months and any trial period at home has been less than thirty days. *Id.* § 232.116(1)(h)(1)–(3). Both paragraphs require the State to prove by clear and convincing evidence that at the present time the child cannot be returned to parental custody as provided in section 232.102. *Id.* § 232.116(1)(f)(4), (h)(4).

The parents contend the State did not prove by clear and convincing evidence that the children could not be returned to their care. Shane argues they are both "attentive parents who are bonded to their children. They have an appropriate residence and ample toys for the children." Tricia contends "she has made reasonable efforts to comply with the case permanency plan." She blames her November 2020 positive drug test on "environmental exposure"—possibly from Shane's use of methamphetamine in the home without her knowledge.

The State counters that both parents continue to suffer from unaddressed substance-abuse issues, which prevent safe reunification. We agree. The parents have balked at random drug testing. Without regular testing, the DHS cannot tell if they have addressed their addictions. And "[w]hen a parent is actively using methamphetamine, we may conclude a child is imminently likely to suffer harmful effects due to the parent's inability to exercise a reasonable degree of care in supervising the child." *In re P.H.*, No. 20-0372, 2020 WL 5650628, at *3 (Iowa Ct. App. Sept. 23, 2020). As the juvenile court found, these parents have "made no commitment to obtaining or maintaining sobriety." Without that commitment, the children could not return to their custody by the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). Termination of the parents' rights was proper under paragraphs (f) and (h).

## B.  Closeness of Parent-Child Relationships

Even when the State proves a ground for termination, the juvenile court may decline to sever the parent-child relationship if that severance is not in the children's best interests under Iowa Code section 232.116(2) or a permissive factor in section 232.116(3) compels preservation of the parents' rights. *See In re A.S.*,

906 N.W.2d 467, 472 (Iowa 2018) (describing three-step analysis of termination cases). Both Shane and Tricia argue that the court should have declined to terminate their rights because of the closeness of the parent-child bonds.[5] *See* Iowa Code § 232.116(3)(c); *see also A.S.*, 906 N.W.2d at 476–77 (holding parent resisting termination bears burden to establish exception under section 232.116(3)).

Both parents highlight how much the children enjoy visitation. Tricia points to testimony from the DHS caseworker and the family support specialist that the children have a strong bond with their parents. In fact, when Li.F. was sometimes inconsolable at the end of a visit, Tricia would reassure him by counting the days until the next scheduled interaction. Similarly, Shane asserts both parents "were active participants in visits, and the testimony reflects that the children greatly enjoyed these visits, and in fact were impacted negatively when visitations were occasionally canceled."

No doubt, visitation between a parent and child is a key "ingredient to the goal of reunification." *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). Our record shows Shane and Tricia went to great lengths to entertain the children during their supervised visitations. But the juvenile court wisely recognized that a healthy bond required more: "The couple has limited their relationship to that of being weekly playmates with their children." While concentrating on amusements for the children, Tricia and Shane failed to address

---

[5] Both parents' petitions on appeal mention best interests, but neither argue the factors under section 232.116(2). So we interpret their arguments as raising only section 232.116(3)(c).

fundamental parenting issues, like their substance abuse, mental health, and Shane's history of domestic violence.  Under these circumstances, neither parent proved termination would disadvantage the children or that such a disadvantage would overcome the parents' refusal to confront obstacles to providing safe and reliable care.  *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010).

### C.    Guardianship

Finally, Tricia contends the juvenile court should have placed Li.F. and La.F. in a guardianship with their maternal aunt and uncle, who traveled to Iowa from their home in Arkansas for weekend in-person visits with the children.  The State counters that a guardianship "would not be a suitable permanency plan for these young children."  We agree with the State.

In most cases, a guardianship "is not a legally preferable alternative to termination."  *See A.S.*, 906 N.W.2d at 472 (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)); *see also In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021).  This case is no exception.  These children, both under the age of six, need a long-term permanent placement.  And the juvenile court expressed another valid concern: "The parents' prior falsification of documentation, and lack of trustworthiness throughout this case additionally leads the Court to believe that a guardianship would be potentially detrimental to the children."  Termination of parental rights is a better option than a guardianship for these children.

**AFFIRMED ON BOTH APPEALS.**