# IN THE COURT OF APPEALS OF IOWA

No. 21-0819
Filed September 1, 2021

**IN THE INTEREST OF J.G.,**
**Minor Child,**

**C.G., Father,**
        Appellant,

**A.S., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A mother and father separately appeal from the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

Raya Dimitrova of Carr Law Firm, P.L.C., Des Moines, for appellant father.

Zachary C. Priebe of Jeff Carter Law Offices, PC, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Erin Mayfield of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**VAITHESWARAN, Judge.**

A child was born in 2020 with methamphetamine, morphine, codeine, and "6-MAM"[1] in his system. He was discharged to the care of his paternal grandparents.

The district court adjudicated the child in need of assistance (CINA) and eventually terminated parental rights pursuant to Iowa Code section 232.116(1)(h) (2021), which requires proof of several elements, including proof the child cannot be returned to parental custody. On that element, the court stated:

> The Court has considered the parents' claims the baby could be returned to their custody immediately. Unfortunately, the parents have not addressed their underlying substance abuse and other needs. Throughout the CINA case, the Court repeatedly begged the parents to focus on sobriety and safety. That has not yet occurred. Neither parent can safely parent [the child], due to their significant substance abuse and mental health needs. The baby cannot be returned to their custody.

On appeal, both parents contend the State failed to prove termination was warranted under section 232.116(1)(h). The mother argues the child could have been returned to her custody because "her current home [was] appropriate" and COVID-19 restrictions prevented her from completing substance-abuse treatment. The father argues the child could have been returned to his custody because he showed "through his recent efforts that he [was] motivated to change," he had "stable housing" with the mother, and he had "a solid support system in his parents."

---

[1] "6-MAM", or 6-monoacetylmorphine, is a metabolite of heroin and "[t]he presence of 6-monoacetylmorphine . . . [in a child] is definitive for heroin use by the mother." Mayo Found. for Med. Educ. & Rsch., *6-Monoacetylmorphine (6-MAM), Confirmation, Meconium*, https://www.mayocliniclabs.com/test-catalog/Clinical+and+Interpretive/89659 (last visited Aug. 25, 2021).

The mother's housing situation was indeed appropriate. The department of human services case manager conceded as much. The core fact resulting in termination was the mother's substance abuse.

The mother was diagnosed with severe opioid use disorder. She went in and out of treatment facilities from the time of the child's birth in the summer of 2020 through the late fall of that year. At one of her substance-abuse evaluations, she admitted smoking heroin more than three times a day and using methamphetamine one to three times in the previous month. She was arrested with heroin and drug paraphernalia in her possession.

The case manager testified that the mother was not able to demonstrate a period of sobriety throughout the CINA case. She tested positive for methamphetamine and amphetamines in the summer of 2020, had a negative test the following month, but tested positive for methamphetamine in the ensuing two months and again in early 2021. The case manager did not believe the COVID-19 pandemic was a barrier to the mother's ability to gain access to services.

The mother disagreed, citing reduced bus scheduling during the height of the pandemic. At the same time, she acknowledged the lack of bus transport did not affect her ability to reach another treatment facility with the assistance of the child's paternal grandparents.

The case manager opined that the mother was not in a position to have custody of the child returned to her. On our de novo review, we agree. The mother's addictions combined with her unsuccessful treatment efforts supported the district court's conclusion that the State proved the elements of section 232.116(1)(h).

We turn to the father's circumstances. He used opiates for seven years and also used methamphetamine. A substance-abuse evaluator diagnosed him with "opioid use disorder, severe and stimulant use disorder, moderate." According to the case manager, the father "was able to participate in [an] extended outpatient treatment program" but "reported that he was discharged because of missing too many appointments." To his credit, he completed another program late in 2020. But he left a follow-up halfway house "against staff advice" and had positive drug tests in late 2020 and into 2021.

The father acknowledged one of the relapses but wondered if the other positive tests resulted from a prescription drug he took. Although he re-engaged in substance-abuse treatment, the case manager did not believe the child could be safely returned to his custody because he had "not been able to provide proof that he [was] able to maintain a consistent sober lifestyle." We conclude the State proved the elements of section 232.116(1)(h) with respect to the father.

Both parents also argue termination was not in the child's best interest. *See* Iowa Code § 232.116(2). The supreme court recently addressed a similar scenario—a child who was removed from his mother's care based in part on her use of methamphetamine and was "well cared for by his paternal grandparents." *In re W.M.*, 957 N.W.2d 305, 309, 314 (Iowa 2021). The court stated, "This is exactly the sort of case where we must not deprive a child of permanency on the hope Mom will get better." *Id.* at 314.

The same holds true here. The parents were afforded multiple opportunities to address their addictions. They had yet to reach a point where they could safely parent the child. As the department reported:

> [The child] is nearly 10 months old, he has never been in either parents care outside of a hospital setting. He was discharged to live with and be cared for by his grandparents. [The child] has only had supervised interactions with his parents. [The child] is young and dependent upon others to meet his needs and ensure his safety. [The parents] are not in a position to care for [the child] now or in the foreseeable future.

We conclude termination of parental rights was in the child's best interests.

Both parents assert the district court should have afforded them an additional six months to move toward reunification with the child. *See* Iowa Code § 232.104(2)(b). The department case manager stated she considered that option but "neither parent [was] providing [her] very much hope that they [were] going to obtain the services and participate in them in enough time to . . . successfully work towards reunification within a six-month period." We concur in this assessment. The district court appropriately denied a six-month extension.

The mother contends the district court should have invoked permissive exceptions to termination based on the child's placement with a relative and the closeness of her relationship with the child. *See id.* § 232.116(3)(a), (c). The case manager acknowledged mother and child were bonded and there was no dispute that the child was placed with a relative. The manager testified neither fact changed her recommendation, given the child's need for permanency. Again, we agree with the department's recommendation and the district court's denial of the exceptions.

We are left with the father's request to have the child placed in a guardianship with his sister. "A guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (citing *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). That is particularly true where the child is

too young to express a preference.  *See id.* at 478 (noting the child was two years old rather than ten as was the case in *B.T.*).  The child of these parents was one year old.  The case manager noted there were "unsettled legalities" with an existing guardianship the aunt had over another child and the aunt's ability to provide for that child.  In light of those uncertainties and the child's age, we conclude the creation of a guardianship was not warranted.

We affirm the termination of the parents' rights to the child.

**AFFIRMED ON BOTH APPEALS.**