**IN THE COURT OF APPEALS OF IOWA**

No. 25-0367
Filed June 18, 2025

**IN THE INTEREST OF J.S. and J.S.,**
**Minor Children,**

**J.S., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, Judge.


　　A mother appeals the juvenile court's order terminating her parental rights to two children.  **AFFIRMED.**


　　Lynn Vogan, Juvenile Public Defender, Des Moines, for appellant mother.

　　Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

　　Teresa M. Pope of Pope Law PLLC, Des Moines, attorney and guardian ad litem for minor children.


　　Considered without oral argument by Badding, P.J., Chicchelly, J., and Mullins, S.J.*

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**MULLINS, Senior Judge.**

A mother appeals the termination of her parental rights to two of her children—J.S. and J.S.—who were born in 2019 and 2020. The juvenile court terminated the mother's rights pursuant to Iowa Code section 232.116(1)(f) (2025). In this appeal, she contends that termination is not in the children's best interests and that the juvenile court should have transferred guardianship to their grandparents instead. Our review is de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

J.S. and J.S. were originally removed in July 2023 after federal agents conducting a search of the mother's home discovered, among other contraband, a loaded firearm and cocaine residue near a bed where the children slept. The mother later pled guilty to three federal offenses and was serving a fifty-four-month prison sentence at the time of the termination hearing in this case. She does not challenge the grounds for termination under section 232.116(1)(f), so we may turn directly to the question of whether termination was in the best interests of J.S and J.S. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The children's best interests are our primary concern in any termination case. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019). When deciding what outcome will serve those interests, we consider the children's safety, their long-term nurturing and growth, and their physical, mental, and emotional needs. Iowa Code § 232.116(2). To that end, a parent's past performance "may be indicative of the quality of the future care that parent is capable of providing." *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (citation omitted). We also consider the children's integration in their new environment, Iowa Code § 232.116(2)(b), mindful that their

"safety and need for a permanent home" are essential factors in the best-interests inquiry, *see In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

Prior to their removal, J.S. and J.S. lived in dangerous proximity to crime. The mother was a daily marijuana user. Her adult son was associated with a street gang. Both were indicted as co-conspirators after the mother agreed to buy a firearm for the son, who was prohibited from purchasing one himself. The mother told federal investigators that she was "strong on having . . . a gun accessible to the older kids" due to a shooting that took place outside their previous residence. When offered the chance to avoid punishment by cooperating with the government, the mother declined—a decision she attributes to the "extreme risk" of retaliation against her family.

The mother assured the juvenile court that she takes "full accountability" for the substance use and gun offenses that placed her children in harm's way. She also asserts that she availed herself "of every service she had access to" in prison, including a ten-week substance abuse class. But because she has refused to sign necessary releases, we are unable to verify those efforts. Furthermore, the mother has yet to translate her prison experience into a new life in the community. And by the time she has the chance to do so—with a halfway house placement sometime in June 2025, according to the mother's calculations—these children will have spent two years outside of her custody, with no reasonable projected date by which they could be returned to her care. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41.

The guardian ad litem reported that J.S. and J.S. are safe, comfortable, and well-cared-for in the home of their paternal grandparents, where they have been placed since August 2023. The grandparents are licensed foster parents who hope to adopt the children following the conclusion of this case. They are also the placement for the children's half-sibling. *See In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006) (noting the "preference" in juvenile law "to keep siblings together"). Under these circumstances, we cannot agree that reunification is the better path for J.S. and J.S. These children deserve to continue in the safe and stable environment they have come to know during their mother's incarceration.

We similarly reject the mother's argument that the juvenile court should have transferred guardianship to the children's grandparents in lieu of terminating the mother's rights.[1] "[A] guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018). This is especially true in the case of young children, for whom a transfer of guardianship does not guarantee permanency. *See id.* at 478 (finding the best interests of a two-year-old child favored termination of parental rights rather than a guardianship). Here, the grandparents indicated a preference for adoption over guardianship. Both the case worker and guardian ad litem agreed, noting concerns that the mother might seek to terminate a guardianship in the future.[2]

---

[1] In her petition on appeal, the mother frames her guardianship argument as a challenge to juvenile court's analysis under Iowa Code section 232.116(3)(a), which permits the court to decline termination where a "relative has legal custody of the child." To the extent the mother contends this exception should apply here, we agree with the juvenile court that it does not. *See In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021) (distinguishing relative placement from "legal custody").

[2] These facts distinguish this case from *In re B.T.*, 894 N.W.2d 29, 33–34 (Iowa Ct. App. 2017), where a panel of our court found a guardianship appropriate based

Upon our de novo review, we find that termination of parental rights, rather than a guardianship, is in the best interests of the children. We therefore affirm the order of the juvenile court.

**AFFIRMED**.

---

in part on the lack of countervailing testimony and the express preferences of the ten-year-old child.