**IN THE COURT OF APPEALS OF IOWA**

No. 25-0851
Filed August 6, 2025

**IN THE INTEREST OF N.T. and C.T.,**
**Minor Children,**

**T.S., Mother,**
    Appellant,

**N.T., Minor Child,**
    Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Jennifer S. Bailey, Judge.

A mother and child separately appeal the termination of the mother's parental rights. **AFFIRMED ON BOTH APPEALS.**

Ryan D. Gerling of Cray Law Firm, PLC, Burlington, for appellant mother.

Becky Wilson, Mason City, for appellant child.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

Kimberly Ann Auge of The Auge Law Firm, Fort Madison, attorney and guardian ad litem for minor child.

Considered without oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A child appeals the termination of the mother's parental rights, and the mother appeals the termination of her parental rights to both children.[1] Both mother and child challenge the best-interests determination and ask us to apply permissive exceptions to termination. Upon our de novo review, we affirm.

## I. Background Facts and Proceedings.

The Iowa Department of Health and Human Services ("the department") removed the children from the mother's custody after receiving allegations about illegal drug use and domestic violence occurring in the home. The children were adjudicated as children in need of assistance and initially placed with a relative. But throughout the proceedings, they were moved several times. Approximately ten months before the termination hearing, the children were placed with a family friend, where they remained for the rest of the proceedings.

While the children bounced from home to home, the mother was provided with multiple department services but failed to comply. In particular, the mother did not address the department's primary concern about her behavior, which was her methamphetamine use. Despite numerous positive drug tests and being "caught having methamphetamine in her possession on three separate occasions," the mother blamed a litany of other factors for the results, including being drugged by a romantic partner, "having to use methamphetamine to stay

---

[1] While the parental rights of the fathers were also terminated during the same proceedings, because they do not appeal, we do not address them. As for the mother's appeal, she asks us to reverse the order terminating her rights to both children. While her argument almost exclusively focuses on N.T., we construe her appeal to challenge the termination of her parental rights to both N.T. and C.T.

awake," "use required of her by law enforcement as a confidential informant," and as a requirement to qualify for treatment services. This addiction even led to criminal charges, and the mother pled guilty to possession with intent to deliver methamphetamine and awaited sentencing. And while the mother completed a substance use evaluation, she provided "false information" to the evaluator, which prompted the evaluator not to recommend treatment. Despite claiming sobriety, the mother tested positive for methamphetamine again just weeks before the termination hearing. She also testified at the hearing, in which she admitted to regular use of marijuana and acknowledged it was a barrier to reunification.

As for mental-health services, the mother was similarly noncompliant. Throughout the case, the mother made her position on treatment clear, prohibiting N.T. from taking her prescribed medications despite experiencing suicidal ideations, sabotaging her children's attempts to obtain diagnoses and treatment, and testifying that "she doesn't believe in medication that is 'based off of meth.'" While the mother was ordered to complete a mental health evaluation in December 2023, she did not comply until September 2024. Even then, the evaluation did not recommend treatment, and the court similarly found this evaluation was inaccurate based on the mother's dishonesty. But despite the mother's failure to make any progress with the department, she told a different narrative to the children, claiming that she was sober and they would be returning home soon, lying about the positive drug tests, criticizing the placement, and placating the children with gifts which the department did not approve. The court found that this "emotional manipulation" was harmful to the children and even described the mother as "one of the most argumentative people this judge has

ever tried to speak with." The mother's behavior continued to be a source of conflict throughout the entirety of the proceedings.

A two-part termination hearing occurred in February and March 2025, at which the department caseworker testified that the mother still had not maintained sobriety, continued to associate with people the department deemed unsafe, and did not have suitable housing or employment. While the mother disputed these allegations, the court did not find her testimony credible. Instead, the court terminated the mother's parental rights. Both mother and child separately appeal.

## II. *Review.*

We review termination-of-parental rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted).

## III. *Discussion.*

While we generally use a three-step analysis when reviewing termination of parental rights, *see In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018), we limit our analysis to the best interests of the child and the permissive exceptions to termination, *see In re J.F.*, No. 19-1647, 2020 WL 110404, at *1 (Iowa Ct. App. Jan. 9, 2020) ("But when, as here, the parent's claims only relate to one step in our analysis, we only address that step.").

### A. *Best Interests of the Child.*

Both the mother and N.T. contend that guardianship, not termination, is in the children's best interests. In determining best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the

long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2) (2024). The "defining elements" in the best-interests analysis are the "child[ren]'s safety" and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011). Based on the mother's lack of progress, we are not convinced that she will be able to provide a safe and stable home for the children. The mother's instability, failure to address her substance-use and mental-health issues, and the subsequent harm this has caused to the children favor terminating parental rights. In fact, the district court expressly found that the mother "hasn't even taken the first step in recovery," which is to admit her substance use. The mother's situation is even more uncertain because, as of the termination hearing, the mother testified that she had not yet been sentenced and was facing up to ten years in prison. While the mother and N.T. urge us to consider guardianship, this "is not a legally preferable alternative to adoption" and does not provide either child with the same level of permanency. *A.S.*, 906 N.W.2d at 477. We similarly echo the district court's concerns that the mother "will weaponize a guardianship proceeding" based on her past attempts to sabotage the relationship between the children and the placement. While a guardianship may be preferable to the mother, we must consider what is best for the *children's* long-term interests, which we find are better served through termination and adoption by the current placement.

In the ten months before the termination, the children have made remarkable progress. The placement made great efforts to obtain mental-health diagnoses and treatment for the children, improve N.T.'s performance and involvement in school, and create a safe, healthy environment. But the mother

has previously derailed such progress as the placement testified that the mother's conduct "seems to be a huge trigger" to N.T.'s mental health, resulting in conflict, increased "behavior issues," and exacerbation of N.T.'s symptoms. *See In re B.T.*, 894 N.W.2d 29, 34 (Iowa Ct. App. 2017) (considering the relationship between the parent and potential guardian to determine whether guardianship is appropriate). Despite this, the placement still expressed a willingness to preserve contact between the children and their mother as long as the mother can maintain her sobriety. *See A.M.*, 843 N.W.2d at 112 (finding the placement's "inten[t] to allow the parents to continue a relationship with [the child]" favors termination). The placement is willing and able to provide the children with permanency that guardianship will simply not offer, and we cannot find that depriving them of permanency is the best course of action. Accordingly, we find that termination, not guardianship, is in the best interests of the children.

### B. Permissive Exceptions to Termination.

The mother and N.T. then ask us to apply permissive exceptions to termination based on either the child's objection or their parent-child bond. *See* Iowa Code § 232.116(3)(b) (permitting the court to decline to terminate when "[t]he child is over ten years of age" and objects to termination), (c) (permitting the court to decline to terminate when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). We first note that such exceptions "are permissive, not mandatory," and we must exercise discretion "based on the unique circumstances of each case and the best interests of the child" to determine whether to apply one. *A.M.*, 843 N.W.2d at 113 (citation omitted).

The record is replete with evidence that N.T. shares a strong bond with her mother. And as the district court stated, N.T., who was eleven at the time of the termination hearing, "has been unwavering in her desire to return to her mother's care." But the court also noted that the mother "continues to pose an imminent risk to her children's life and health, based upon her continued use of methamphetamine and exercise of unsafe parental judgment." We agree. When considering whether to apply a permissive exception, love is not enough; instead, we must consider whether "the mother is . . . capable of adequately meeting [the child's] needs" and addressing her substance use. *In re D.S.*, No. 11-1194, 2011 WL 5868234, at *4 (Iowa Ct. App. Nov. 23, 2011). Based on years of instability and the lack of progress during these proceedings, we find that the mother is not. We therefore decline to apply either exception.

## IV. Disposition.

Because termination is in the best interests of the children and we decline to apply a permissive exception, we affirm termination of the mother's parental rights to her two children.

**AFFIRMED ON BOTH APPEALS.**