# IN THE COURT OF APPEALS OF IOWA

———————————

No. 26-0554
Filed May 27, 2026

———————————

**In the Interest of L.K., Minor Child,**

**E.K., Mother,**
Appellant,

**I.K., Father,**
Appellant.

———————————

Appeal from the Iowa District Court for Marshall County,
The Honorable Paul G. Crawford, Judge.

———————————

**AFFIRMED**

———————————

Norma J. Meade of Moore, McKibben, Goodman & Lorenz, LLP,
Marshalltown, attorney for appellant mother.

Jennie Wilson-Moore of Wilson Law Firm, Conrad,
attorney for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Mary Cowdrey, Assistant Public Defender, Marshalltown, attorney and
guardian ad litem for minor child.

———————————

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Chicchelly, J.

**CHICCHELLY, Judge.**

A mother and father separately appeal the termination of their parental rights to their child. Neither parent contests the grounds for termination. Instead, they contend that the child's best interest is served by setting up a guardianship for the child and preserving their parental rights. Because clear and convincing evidence shows that termination rather than a long-term guardianship serves the child's best interest, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

L.K. was born in November 2021. The family came to the attention of the Iowa Department of Health and Human Services (HHS) in October 2024 when law enforcement executed a search warrant on the family's apartment. One officer noted that the child "was not wearing a diaper" and fought off the mother's attempts to put one on her by "constantly kicking." He added that the mother "seemed to be struggling to control" the child, who was "very high energy" and "wanted to run all over the apartment."

There were clear risks of harm to the child in the home. Both parents admitted using methamphetamine, and the child tested positive for it. The father used methamphetamine intravenously, and officers saw capped and uncapped needles lying on the floor of the bedroom that the child shared with the parents. In the living room, officers discovered a loaded handgun inside a purse, and they found a large water bong and an empty gun magazine on a shelf. One of the people staying at the apartment was a registered sex offender. A child abuse assessment concluded that five allegations of abuse were founded against both parents.[1]

---

[1] A child abuse assessment alleged (1) denial of critical care based on failure to provide adequate shelter, (2) denial of critical care based on failure to provide proper

The juvenile court removed the child from the parents' custody and adjudicated her a child in need of assistance (CINA). HHS placed the child with a paternal aunt, where she stayed throughout the CINA proceedings. The child's maternal grandmother, who lives in Georgia, contacted HHS and asked to be considered for placement and adoption.

HHS offered services to address concerns about the parents' substance use, mental health, housing instability, and parenting skills, but the concerns persisted after removal. When there was no notable progress six months later, the State petitioned to terminate the mother's and father's parental rights.

In a report filed before the July 2025 termination hearing, the guardian ad litem (GAL) noted that unlike the parents, the child had "improved leaps and bounds since [the court] became involved in her life." First, the GAL noted that the child was still drinking from a bottle at the time of removal and "had to learn to eat, basically." After transitioning to solid foods, the child went from "overweight" to a "normal" weight for her height. The child's hair also improved from "matted" at removal to "neatly combed." The GAL also noted there were concerns about speech delays at the time of the removal as the child used "mostly monosyllable or two-word answers." After educational intervention, the child "was using five and sometimes six syllable responses and questions." Finally, the child was "hyper" and had difficulty sleeping after removal but began sleeping well after adopting a bedtime routine.

---

supervision, (3) presence of illegal drugs, (4) allowing access to a registered sex offender, and (5) dangerous substances.

After the mother moved to reopen the evidence in October, a second hearing was held in December.  In March 2026, the juvenile court granted the State's petition and terminated the mother's and father's parental rights under Iowa Code section 232.116(1)(h) (2025).

## STANDARD OF REVIEW

We review termination-of-parental-rights proceedings de novo.  *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025).  While not binding on us, we give weight to the juvenile court's fact findings, especially those assessing witness credibility.  *In re R.M.-V.*, 13 N.W.3d 620, 624 (Iowa Ct. App. 2024).

## DISCUSSION

The mother and father make the same argument on appeal.  They do not dispute that the State met its burden of proving the elements for termination under section 232.116(1)(h) by clear and convincing evidence.  Instead, they claim that the court should have placed the child in a guardianship with the maternal grandmother in Georgia and exercised its discretion to preserve the parent-child relationship under section 232.116(3)(a).[2]

If the State proves the grounds alleged in the termination petition by clear and convincing evidence, the juvenile court may order termination of parental rights.  Iowa Code § 232.117(3).  Or the court may opt instead to adjudicate the child to be a CINA and "[t]ransfer guardianship and custody of the child to an adult relative."  *See id.* §§ 232.104(2)(d)(2), .117(5).  The

---

[2] Under section 232.116(3)(a), "[t]he court need not terminate the relationship between the parent and child if . . . [a] relative has legal custody of the child."  Although the child was placed with the paternal aunt, HHS had legal custody.  *See In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021).

latter option is available only if the court finds convincing evidence that shows termination is not in the child's best interest, services were offered to correct the need for removal, and the child cannot be returned to the home. *Id.* § 232.104(2)(d), (4). Neither parent contests that the State proved services were offered to correct the need for removal and the child cannot be returned home, which are elements of section 232.116(1)(h). The question is whether clear and convincing evidence shows that termination is in the child's best interest.

We agree with the juvenile court that the child's best interest is served by terminating the mother's and father's parental rights rather than setting up a guardianship. "[A] guardianship is not legally preferred to termination." *L.A.*, 20 N.W.3d at 533. Because guardianships can end, *see* Iowa Code § 633.675, a guardianship leaves the child's future placement in limbo, *In re B.T.*, 894 N.W.2d 29, 34–35 (Iowa Ct. App. 2017). The child is young, so any guardianship would need to continue for more than a decade. *See L.A.*, 20 N.W.3d at 533; *see also In re A.S.*, 906 N.W.2d 467, 478 (Iowa 2018) (distinguishing cases in which older children desire to maintain the parent-child relationship from those involving children who are too young to express a preference).

One year after the child's removal, the parents had not shown their commitment to making the changes needed to regain custody of the child. Meanwhile, the child has thrived in the care of the paternal aunt, who is willing to make a long-term commitment to the child. Even the maternal grandmother, who the parents want the court to appoint as guardian for the child, preferred adoption over a guardianship. She testified that a guardianship would be unfair to the child as adoption would give the child more stability.

Depriving the child of the permanency afforded by adoption to preserve the parent-child relationship in name only weighs against the child's best interest. *See In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (noting that a child's need for a permanent home is one of the defining elements in determining a child's best interest); *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987) ("Child custody should be quickly fixed and little disturbed. Children should not be made to suffer indefinitely in parentless limbo." (internal citation omitted)). Because termination is in the child's best interest, we affirm.

**AFFIRMED.**