# IN THE COURT OF APPEALS OF IOWA

No. 23-0154
Filed April 26, 2023

**IN THE INTEREST OF L.T. and L.T.,**
**Minor Children,**

**K.C., Mother,**
    Appellant,

**K.T., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Brent Pattison, District Associate Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Lisa K. Pendroy, Des Moines, for appellant mother.

Deborah L. Johnson of Deborah L. Johnson Law Office, P.C., Altoona, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Richelle M. Mahaffey, Des Moines, attorney and guardian ad litem for minor children.

Considered by Chicchelly, P.J., Buller, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**VOGEL, Senior Judge**

A mother and father separately appeal the termination of their parental rights to La.T. and Li.T., born in 2012 and 2014 respectively. The mother argues the State did not prove the statutory ground for termination, termination is not in the children's best interests, and the court should provide her with additional time for reunification. The father argues the court should grant him additional time for reunification or establish a guardianship in lieu of termination. Due to the parents' limited progress and the children's behavioral and mental-health concerns, we reject the parents' arguments and affirm the juvenile court.

## I.     Background Facts and Proceedings

The Iowa Department of Health and Human Services (DHHS) has repeatedly been involved with this family since 2018 due to concerns over supervision, domestic violence, physical abuse, and substance abuse. Most recently, in January 2021, DHHS investigated reports the parents and a family friend were using methamphetamine while caring for the children. The children subsequently tested positive for amphetamine and methamphetamine exposure. DHHS reported the mother largely refused to cooperate with their investigation, but the father admitted he and the mother were active methamphetamine users and recently used while caring for the children. The children were removed from the parents in February, and adjudicated as being in need of assistance in March.

The father has an extensive criminal history with several convictions for drug-related charges and violent conduct. Shortly before removal, he was arrested and jailed for threatening family members and destroying property. He has been incarcerated for most of these proceedings and continuously since December 1,

2021. He admittedly was not fully engaged with services even when not incarcerated.

Both children have shown behavioral and mental-health concerns throughout these proceedings. After removal, both children were placed with the maternal grandfather until April 2021. At that time, Li.T. moved to a foster family, while La.T. was placed with the mother as she was engaged with services and beginning therapy. However, the mother missed drug tests and various services, so La.T. was again removed from her care less than three months later. The children have continued living in separate residences due to their behaviors since leaving the grandfather's home. Li.T. has resided with his current foster family since May 2022. La.T. has had multiple placements throughout these proceedings, including time at a Psychiatric Medical Institution for Children, and he has resided with his current foster family since October 2022.

In July 2022, the juvenile court found the mother was again largely complying with services. At this time, the court granted an additional three months for reunification with the expectation the mother would "continue to work with her [mental-health] therapist and substance abuse treatment providers to maintain sobriety and wellness," "continue to provide negative drug screens," and "demonstrate the ability to manage the children's basic and special needs."

With a lack of progress by either parent in the services offered, the State filed the petition to terminate parental rights in October 2022. The matter proceeded to a hearing in December. At the hearing, the mother acknowledged she largely failed to comply with the juvenile court's expectations for granting the prior extension: she last provided a sample for drug testing in April, she was

unsuccessfully discharged from substance-abuse treatment in June, and she did not meet with her therapist between July and November. The father, serving a five-year prison sentence, testified he hoped to be paroled in January 2023. Upon consideration of the testimony and exhibits, the court issued an order terminating both parents' rights. Both parents appeal.

## II.      Standard of Review

"We review proceedings to terminate parental rights de novo." *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). We may review the facts as well as the law and adjudicate the parents' rights anew. *Id.* "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

## III.      Analysis

"We generally apply a three-step analysis to review termination of parental rights." *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). "First, we consider whether there are statutory grounds for termination." *Id.* "Second, we determine whether termination is in the best interest of the child." *Id.* "Third, we consider whether we should exercise any of the permissive exceptions for termination." *Id.* We need not discuss any step that neither parent raises. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

### A.  Statutory Ground for Termination

The mother argues the State failed to prove a statutory ground for termination. The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f) (2022), which allows the court to terminate parental rights if the State proves all of the following:

(1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother challenges the fourth element, that the children could not be returned to her custody at the time of the termination hearing. *See D.W.*, 791 N.W.2d 707 (finding the statutory language "at the present time" means "at the time of the termination hearing"). She asserts the children could be returned to her custody, as shown by her claim of maintaining sobriety and consistently attending visitation.

The children were removed from the mother's custody due to her methamphetamine use. She provided several positive drug tests during this proceeding—most recently in January 2022. Her April drug test was negative, but she has refused to submit to drug testing since that time, making it impossible to verify her claims of recent sobriety. She was unsuccessfully discharged from substance-abuse treatment in June 2022, and her claim that she voluntarily left treatment one week before completion also lacks any verification. She failed to meet with her mental-health therapist for approximately four months leading up to the termination hearing, and her explanation that she needed to focus on caring for the children is unpersuasive considering her visitation remained fully supervised. While the mother recently resumed meeting with her therapist and attending substance-abuse treatment, her efforts are too little too late. *See In re*

*C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."). The two children have serious behavioral and mental-health concerns that require stable placements in separate foster homes. The State proved neither child—much less both children—can be safely returned to the mother at the time of the hearing, thus satisfying the statutory ground.

### B. Best Interests

The mother also argues termination is not in the best interests of the children. In evaluating the best interests of the children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2).

The mother asserts the children are not yet integrated into their foster families after being placed with them for only a few months. *See id.* § 232.116(2)(b) (considering "whether the child has become integrated into the foster family to the extent that the child's familiar identity is with the foster family"). Despite their short time with their foster families, the record shows both children are thriving in their current placements. This is especially encouraging in light of their behavioral and mental-health concerns. The mother notes the children have expressed a desire to return to her care. *See id.* § 232.116(2)(b)(2) (directing the court to consider "[t]he reasonable preference of the child, if the court determines that the child has sufficient capacity to express a reasonable preference"). However, the record shows the children truly crave stability. As explained above,

the mother's unaddressed mental-health and substance-abuse issues prevent her from providing this stability.

The mother also asserts that separating the children into different foster homes is not in their best interests. *See In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994 ("[W]herever possible brothers and sisters should be kept together."). While not ideal in many cases, the State showed separation is in these children's best interests to address their behavioral and mental-health concerns. Again, the children are thriving in separate foster homes. Furthermore, both foster families have facilitated contact between the children as well as the grandparents and expressed a willingness in the future to facilitate contact between the children and the mother and father, if they are sober. Considering the mother's continuing inability to safely care for the children and their growth in separate foster families, we agree termination is in the children's best interests.

### C. Additional Time for Reunification

Both parents request additional time for reunification.[1] *See* Iowa Code § 232.104(2)(b) (allowing the juvenile court "to continue placement of the child for an additional six months"). To grant an extension, the juvenile court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from

---

[1] We note the termination order only addresses the father's request for additional time. The juvenile court ordinarily must consider and rule upon a parent's argument to preserve the issue for our review. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Despite our concerns with error preservation, we choose to address the mother's request for additional time alongside the father's request.

the child's home will no longer exist at the end of the additional six-month period." *Id.*

The children had been removed from the parents' custody for over twenty-two months at the time of the termination hearing. Importantly, the juvenile court already granted one extension of time during these proceedings. The DHHS worker testified the uncertainty around permanency is contributing to the children's already significant behavioral and mental-health concerns.

Specific to the mother, the prior extension required her to engage with substance-abuse treatment and testing, attend mental-health therapy, and show an ability to care for the children's needs. As explained above, she failed to meet these expectations as she did not complete treatment or testing, meet with her therapist, or progress beyond fully supervised visitation. Due to her failure to comply with the prior expectations, we cannot conclude she would address these expectations with another extension.

Specific to the father, he testified he has engaged with substance-abuse and mental-health treatment while incarcerated. However, nothing in the record verifies his hope that he would be paroled soon after the termination hearing. Even if we accept that he would be paroled into a setting where he could take custody of the children before the end of a six-month extension, he has shown no ability to remain sober and engage with treatment outside of incarceration.

"We will not gamble with [children's] future by asking [them] to continuously wait for a stable biological parent, particularly at such a tender age." *In re D.S.*, 806 N.W.2d 458, 474 (Iowa Ct. App. 2011). Considering the length of these

proceedings, the children's special need for permanency, and the parents' limited history of progress, another extension of time for reunification is not appropriate.

### D. Guardianship

The father asks that we place the children in a guardianship in lieu of termination. Again, the children's uncertainty about their future is already contributing to their behavioral and mental-health issues, and a guardianship would continue this uncertainty. Furthermore, "a guardianship is not a legally preferable alternative to adoption." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). The juvenile court found that "guardianship would continue the limbo the children have experienced in recent months." We agree and reject the father's request for a guardianship.

### IV. Conclusion

The State proved the statutory ground for termination, and termination of parental rights is in the children's best interests. Moreover, additional time for reunification with either parent is not appropriate, and we reject the request for a guardianship in lieu of termination.

**AFFIRMED ON BOTH APPEALS.**