**IN THE COURT OF APPEALS OF IOWA**

No. 24-0026
Filed April 10, 2024

**IN THE INTEREST OF H.G.,**
**Minor Child,**

**M.R., Mother,**
    Appellant,

**A.R., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Marion County, Steven Guiter, Judge.

A mother and father separately appeal the termination of their respective parental rights. **AFFIRMED ON BOTH APPEALS.**

Bryan Webber of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

Sarah E. Dewein of Cunningham & Kelso, P.L.L.C., Urbandale, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Kaitlyn C. DiMaria of DiMaria Law, PLLC, Grimes, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

The juvenile court terminated the parental rights of the mother and father of three-year-old H.G. The parents separately appeal. Both challenge the statutory grounds authorizing termination, contend termination is not in the child's best interests, and claim the juvenile court should have applied permissive exceptions to preclude termination and establish a guardianship instead.

Before addressing those challenges, we note several issues referenced in the parents' petitions on appeal that we cannot address. Both parents allude to reasonable-effort challenges. However, our review of the record reveals neither parent alerted the juvenile court to any perceived deficiencies in services prior to the termination hearing, foreclosing their ability to raise a reasonable-efforts challenge on appeal. *See In re C.S.*, No. 23-2011, 2024 WL 707010, at *1 (Iowa Ct. App. Feb. 21, 2024). The mother also asserts termination "violates her due process rights and equal protection under the United States Constitution and the Iowa Constitution." Because she never raised these constitutional claims below, they are not preserved for our consideration. *See State v. Stone*, 764 N.W.2d 545, 550 (Iowa 2009) ("We will not consider issues, even constitutional issues, which a party did not properly raise in the district court."). And to the extent the mother attempts to advocate on behalf of the father, she does not have standing. *See In re A.S.*, No. 23-1625, 2023 WL 8449568, at *1 n.1 (Iowa Ct. App. Dec. 6, 2023).

We turn to the issues properly presented. We start by noting that we conduct de novo review of orders terminating parental rights. *See In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). Our review follows a three-step process that involves determining if a statutory ground for termination has been established, whether

termination is in the child's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).

As to the father, the juvenile court found grounds authorizing termination under Iowa Code section 232.116(1)(h) (2022). With respect to the mother, the juvenile court found grounds authorizing termination under section 232.116(1)(e) and (h). As the mother's rights were terminated on multiple grounds, we affirm if either of the grounds is supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."). We turn our focus on paragraph (h), which permits termination upon clear and convincing proof that (1) the child is three years of age or younger; (2) the child has been adjudicated a child in need of assistance; (3) the child has been removed from the physical custody of the parents for at least six of the last twelve months; and (4) the child cannot be returned to the custody of the parent. Iowa Code § 232.116(1)(h). As the juvenile court found this statutory ground satisfied as to both parents, we address their challenges in tandem.

Both parents concede the first two elements. The mother concedes the third element as well. The father does not. He argues that the juvenile court's "determination that the child met the requirements of [the third element] frustrates the purpose behind the statute." He reasons "[t]he purpose is not to terminate the parent's rights the moment the timeframe elapses." But he does not contest that the child has been removed from his physical custody for at least six of the last twelve months. That is really the end of the discussion in terms of establishing the

third element. The third element calls for determining an objective fact, and there is no dispute that the fact was established here. If there were some argument why terminating rights would be unfair, it may be appropriate to assert it in some other context—for example, whether termination is in the child's best interests or whether an additional six months to work toward reunification was warranted—but such an argument would not change the objective fact comprising the third element of termination under paragraph (h). But even ignoring the fact that the father's argument is misplaced in framing it as an attack on the third element, it is meritless in this case. The child was removed from parental custody by way of a court order in December 2021. A January 2022 adjudicatory order confirmed the child's removal was necessary. The child had not returned to parental custody by the time of the termination-of-parental-rights hearing. Due to a series of continuances granted for various reasons, that hearing did not occur until December 2023— effectively giving the parents about an additional year beyond the minimum timeline required by section 232.116(1)(h)(3) to work toward reunification. So there is no question the State established the third element.

The fourth element, which both parents challenge, questions whether the child could be safely returned to each parent's custody at the time of the termination hearing. *See id.* § 232.116(1)(h)(4) ("There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time."); *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that "at the present time" means at the time of the termination hearing).

Regarding the mother, we agree with the juvenile court that the child cannot be safely returned to her custody. The mother has been unwilling to participate in any mental-health services. She refused to complete drug testing and did not complete substance-use treatment. Behavioral indicators suggest she has been regularly using illegal substances, and marks on her arms are indicative of intravenous drug use. The mother admitted to a caseworker that she used methamphetamine within a few days before the termination hearing. *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous environment for children."). From our review of the record, we conclude the mother is not a safe caregiver, so the juvenile court correctly determined the child could not be returned to her custody.

As to the father, the child cannot be safely returned to his custody either. Of concern is the father's failure to follow through with recommended mental-health treatment. The father's ability to maintain a clean home is also concerning given that the child is too young to self-protect against hazards. When workers inspected his home the day prior to the termination hearing, they found "many places in the home with dog urine and/or dog feces laying around visible." The workers also observed that one of the father's dogs had worms coming out of its rectum and when it was brought to the father's attention, he wiped them up but did not disinfect the area. But most concerning is the father's refusal to cut ties with the mother. Despite his acknowledgment that the mother still uses methamphetamine, he still permitted her to move into his home, where she continued to reside at the time of the termination hearing. When asked if he would feel safe leaving the child alone

with the mother, a known methamphetamine user, he said he would. We conclude the father lacks the necessary judgment to protect the child from unsafe individuals, specifically the mother. We agree with the juvenile court's conclusion that the child cannot be safely returned to the father's custody.

We conclude the State established a statutory ground authorizing termination of both parents' rights.

We next consider whether termination is in the child's best interests. In doing so, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

We agree with the juvenile court that termination of both parents' parental rights is in the child's best interests. The child is not safe in the care of either parent. Conversely, the child's custodians—the child's maternal grandparents— have provided the child with necessary safety and structure. They are also willing to permanently integrate the child into their immediate family through adoption. *See* Iowa Code § 232.116(2)(b). Termination of the parents' parental rights is a necessary step that must occur before that can come to fruition, and we find that step to be in the child's best interests.

Still, both parents argue we should apply a permissive exception to termination and instead establish a guardianship. A parent seeking application of

an exception to termination has the burden to establish that exception, and the court has discretion whether to apply the exception to preclude termination. *See A.S.*, 906 N.W.2d at 475–76 (recognizing a parent seeking application of a permissive exception to termination has the burden to establish such an exception). Both parents cite their respective bonds with the child, implicating section 232.116(3)(c). With respect to the parents' bonds with the child, we do not doubt that those bonds exist and that they are significant. But neither parent has established their respective bond with the child is so significant that termination would be manifestly detrimental to the child, so section 232.116(3)(c) does not apply. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021).

Both parents also point to the fact that the child is in the legal custody of the maternal grandparents, providing a potential basis to forgo termination under section 232.116(3)(a). Both contend that exception should be applied and a guardianship should be established instead. Like the juvenile court, we decline to apply this permissive exception and establish a guardianship. "[A] guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). And a guardianship is a particularly poor option in instances where the child is too young to express an informed preference. *In re A.S.*, 906 N.W.2d 467, 478 (Iowa 2018). This child was three years old at the time of termination hearing—too young to express any informed preference—weighing against a guardianship as a viable alternative to termination. *See id.* And a caseworker testified that the child's maternal grandparents had concerns about serving as guardians rather than adopting the child due to anticipated interference from the mother. Given the child's young age, the fact that he has spent most of

his life in the care of his grandparents, the grandparents' willingness to adopt, and the grandparents' concerns of interference from the child's mother if a guardianship were established in lieu of termination, we agree with the juvenile court that a guardianship is not appropriate in this case. Like the juvenile court, we decline to apply a permissive exception to termination with respect to either parent.

**AFFIRMED ON BOTH APPEALS.**