# IN THE COURT OF APPEALS OF IOWA

No. 25-0923
Filed August 6, 2025

IN THE INTEREST OF B.A and M.A.,
Minor Children,

J.A., Father,
    Appellant,

S.A., Mother,
    Appellant.

_____

Appeal from the Iowa District Court for Muscatine County, Gary P. Strausser, Judge.

Parents separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Christopher J. Foster, Iowa City, for appellant father.

Esther J. Dean, Muscatine, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Mark J. Neary, Iowa City, attorney and guardian ad litem for minor children.

Considered without oral argument by Schumacher, P.J., and Badding and Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

Parents separately appeal the termination of their parental rights to two children, born in 2008 and 2016. Both challenge the sufficiency of the evidence supporting the grounds for termination and request that a guardianship be established as an alternative to termination.

We conduct a de novo review of termination-of-parental-rights orders. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Our review follows a three-step process that involves determining whether a statutory ground for termination has been established, whether termination is in the children's best interests, and whether any permissive exceptions should be applied to preclude termination. *Id.* at 294. But if a parent does not challenge a step on appeal, then we do not address it. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The court found grounds authorizing termination of the mother's parental rights under Iowa Code section 232.116(1)(f), (g), and (*l*) (2025) and the father's parental rights under section 232.116(1)(e), (f), (g), and (*l*). We affirm if any ground is supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We elect to focus on section 232.116(1)(f). Neither parent disputes the first three elements of that section—the children are four years of age or older, have been adjudicated in need of assistance, and have been removed from the physical custody of the parents for the time specified in the applicable subparagraphs. Iowa Code § 232.116(1)(f)(1)–(3). Instead, they focus on the fourth element—whether the children could be safely returned to their custody at the time of the termination hearing. *Id.* § 232.116(1)(f)(1)(4) (requiring a finding that "[t]here is clear and convincing evidence that the child cannot be returned to the custody of the child's

parents as provided in section 232.102 at the present time"); *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that "at the present time" means at the time of the termination hearing). Following our review of the record, we concur with the court that the children could not be safely returned to the parents' custody at the time of the termination hearing due to the parents' longstanding and unaddressed methamphetamine use.

This family came to the attention of the Iowa Department of Health and Human Services in January 2022, when the mother gave birth to twins testing positive for methamphetamine and amphetamines. The parents acknowledged regular and longstanding use of methamphetamine, including days before the birth of the twins. One of the twins passed away due to health complications. The other twin, L.A., and the parents' older children, B.A. and M.A. were adjudicated in need of assistance. L.A. was removed from the parents' custody at the time of release from the hospital in May 2023. The parents' rights to L.A. were terminated in December 2024; this court affirmed their appeals. *See In re L.A.*, 20 N.W.3d 529, 536 (Iowa Ct. App. 2025).

B.A. and M.A. were allowed to remain in their parents' custody under department supervision. They were removed in August 2023, however, because the parents continued to miss and/or fail drug tests. B.A. also tested positive for methamphetamine, but the parents maintained they did not know how she was exposed.

The parents did not meaningfully participate in services. Visits never progressed beyond fully supervised, for one hour each week. Eventually, the father's visits were stopped altogether because he failed to participate in any drug

tests. Although the mother attended a few drug tests, they were positive for methamphetamine. Both parents exhibited signs of substance use. The father attributed the sores on his body to poison ivy from mowing. In December 2024, the State initiated termination-of-parental-rights proceedings for B.A. and M.A.

The termination hearing took place over two days in January and February 2025. On the first day, the parents were directed to take a drug test immediately following the hearing. They failed to do so. The father, who was forty-six years old, testified he first started using methamphetamine when he was fifteen. The last drug test the father successfully completed was in October 2022. He testified that he refused further tests because he didn't "trust" the department "and their cohorts." But he stated he "just came up with this plan" to purchase drug tests on his own; he was "just waiting for the tests to come in the mail" and then he would "take a UA every day." When asked what relief he requested from the court, he responded, "I want the Court to see the games they [the caseworkers] play"; "Win or lose, I have had enough."

The mother testified she started using methamphetamine—with the father—in "2016 or 2017." She testified that she had "actually been re-enrolled and started over" with substance-use treatment "about six or seven times" during this case. She maintained her last date of use was in October 2023, but she took a test in November of that year that was positive for methamphetamine. Caseworkers acknowledged the mother was more involved during visits than the father, but it was clear the parents were committed to their marriage and the mother would not agree to attempt to parent without the father. Aside from these

significant concerns, the parents had not allowed the department "to view the[ir] home to see if it is safe and suitable for visits or for [the] children."

Department caseworkers opined the children could not be safely returned to the custody of either parent "until [they] are able to assure sobriety." As caseworkers reported, the parents' lack of "treatment was a really big factor in keeping them from moving forward" and concerns about their substance use were not "mitigated in any fashion"; "[i]t is hard to understand where the parents are at in their sobriety, if they have any sobriety, because of their lack of participation in our services." Based on these and other facts replete in the record, we agree with the court's finding that Iowa Code section 232.116(1)(f) was satisfied.

Both parents also claim that rather than terminating their parental rights, the court should have established a guardianship for both children with the maternal grandparents. *See* Iowa Code § 232.117(5) (allowing the court, after a termination hearing, to not order termination of parental rights but instead enter an order in accordance with several sections, including section 232.104); *see also id.* § 232.104(2)(d)(2) (allowing the court to enter an order transferring guardianship and custody of the children to an adult relative).

To establish a guardianship in lieu of termination, the court must determine by clear and convincing evidence that "termination of the parent-child relationship would not be in the best interest of the child." *Id.* § 232.104(4)(a). However, a guardianship does not provide the same level of stability and safety for children as termination of parental rights and adoption because it is not permanent. *In re A.C.,* No. 23-0567, 2023 WL 3612382, at *2 (Iowa Ct. App. May 24, 2023) ("The impermanent nature of guardianships denies children the security and stability that

a permanent home provides."). Accordingly, "a guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017).

On this issue, the guardian ad litem maintains:

A guardianship for these children, ages 16 and 8, whose parents have ongoing significant substance abuse, employment, housing, and mental health issues, is not appropriate. The children are bonded to their younger biological sister, who resides in their home. The children are bonded to their maternal grandparents, and have resided in their home for more than 1 1/2 years. The children deserve permanency.

The court explained its reasoning to find a guardianship "is not appropriate in this case" as follows:

The [maternal grandparents], while relatives, have a strained relationship with the parents. They have been unwilling to supervise visits between the parents and children. Further, a guardianship is not appropriate because one of the children has no desire to see her parents and a guardianship would serve no purpose. The Court cannot find there is a strong bond between [the children] and their father due to the fact that he is not at any visits since visits were suspended. While [the children] have some bond with their mother, their bond is stronger now with the [maternal grandparents], and as noted above, they enjoy residing in the same home as their sibling . . . and are bonded to each other. The children need and deserve permanency that termination of parental rights will provide.

We concur with the court's conclusion that termination of the parents' rights is the most appropriate permanency option, and we affirm the court's decision to terminate their parental rights.

**AFFIRMED ON BOTH APPEALS.**